Opinion
MOSK, J.
We granted review in this matter to address the question whether an entity that is represented by in-house counsel may recover attorney fees under Civil Code section 1717. As will appear, the answer is yes. Like private counsel, in-house counsel stand in an attorney-client relationship with the corporation and provide comparable legal services. In the case of such representation, the trial court retains broad discretion under Civil Code section 1717 to fix an award of attorney fees in a reasonable amount. Accordingly, we affirm the judgment of the Court of Appeal.
I
Defendant David Drexler, an attorney, was insured under a professional malpractice insurance policy through the Los Angeles County Bar Association. The liability carriers were Dearborn Insurance Company, Anglo-American Insurance, Ltd., and Generali S.P.A. London Branch (hereafter the insurers). PLCM Group, Inc. (hereafter PLCM), administered the insurance program and processed the claims. The policy provided for a deductible of $20,000 per claim for both indemnity and expense payments. It contained a deductible-reimbursement and attorney fee provision (hereafter the reimbursement provision) as follows. “The deductible shall be paid by the Named Insured upon demand by the [insurance companies] to the persons or entities designated by the [insurance companies]. The [insurance companies] shall have the right ... to advance sums on behalf of the Named Insured within the applicable deductible. If the Insured fails, after demand, to reimburse the [insurance companies] for any amounts within the deductible which the [insurance companies have] advanced, the [insurance companies] may bring suit to recover such amounts and shall also be entitled to recover interest from the date of demand, and attorneys’ fees and costs incurred in bringing the action.”
*1089 In January 1991, Drexler was sued for professional malpractice. He tendered his claim to PLCM, which retained the law firm he selected, Haight, Brown & Bonesteel (hereafter Haight, Brown) to defend him. PLCM reviewed the bills from the law firm and found them to be appropriate. By the time the lawsuit was settled in November 1991, Drexler had paid $9,680 in defense fees. In December 1991, Haight, Brown sent him a bill for the balance of fees in the amount of $10,319.62. Drexler did not pay any portion of the bill.
In March 1992, PLCM sent a letter to Drexler reviewing the amount owing to Haight, Brown and quoting the policy language regarding his obligation to satisfy the deductible. Drexler responded that he was in the process of discussing his “concern over the matter” with Haight, Brown. In April and June 1993, Haight, Brown firm sent outstanding bill statements to PLCM reporting that the deductible had not been paid.
In October 1993, PLCM invoked the reimbursement provision, paid Haight, Brown the outstanding amount, and demanded reimbursement from Drexler. Drexler responded that he did not “owe anything” to PLCM or to Haight, Brown, and cautioned PLCM against taking any action against him. In a second letter to PLCM, he reiterated his refusal, stating that the payment to Haight, Brown “was voluntary and unauthorized” and was “made as an attempt to prejudice and undercut my rights to dispute [the law firm’s] entitlement to the claimed fee.”
In February 1994, PLCM assigned the claims to a collection firm, which filed an action for breach of contract in municipal court. Drexler cross-complained against PLCM and the insurers, alleging breach of contract, insurance bad faith, and intentional infliction of emotional distress. Drexler’s cross-complaint sought damages, including general, special, and punitive damages, exceeding the jurisdictional limit of the municipal court; he moved to transfer the case to the superior court. After his motion to transfer the case was granted, the claim was reassigned to PLCM, which was substituted in as plaintiff. Drexler engaged in extensive discovery and motion practice and refused all attempts at settlement. PLCM and the insurers successfully moved for summary judgment on the cross-complaint. In response to an offer by PLCM to accept judgment pursuant to Code of Civil Procedure section 998, Drexler stated that he was “not interested”; he was “willing to spend whatever amount of time and money it takes to see this matter through to conclusion” and threatened “[u]pon the successful defense of this matter, [to] sue you and your principals for malicious prosecution.”
Trial commenced in January 1997. Drexler appeared in propria persona; PLCM was represented by in-house counsel employed by its parent company, Aon Corporation. PLCM is charged annually, on a prospective basis, *1090 by Aon Corporation for a proportional share of the expenses of operating the law division, the functional equivalent of a retainer: the charge is not based on the actual costs of representation in any particular matter. The jury returned a verdict in favor of PLCM for the full amount of $10,319.62. PLCM and the insurers sought a fee award of $61,050 under the reimbursement provision, based bn the total attorney hours expended at the prevailing market rate of $185 per hour for attorneys of comparable experience. The fee motion included a detailed reconstruction by in-house counsel of time records for all activities performed. Drexler moved to tax costs, on the ground, inter alia, that attorney fees for in-house counsel could not be recovered. The superior court entered judgment including an award of attorney fees to PLCM in the requested amount.
Drexler, in propria persona, appealed the order awarding attorney fees. He contended that under Trope v. Katz (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259], PLCM was entitled to no attorney fees for the work of in-house counsel, or, at most, to fees in an amount not exceeding in-house counsel’s actual salary. Rejecting the claim, the Court of Appeal affirmed. It held that Civil Code section 1717 permits an award of attorney fees for in-house counsel. It also concluded that the fee award was properly calculated with reference to the prevailing market rate in the community for similar work and was supported by substantial evidence. It rejected a salary plus cost approach on the basis that it could lead to complicated, collateral litigation and determined that a reasonable fee should be based on an objective standard of reasonableness, i.e., the market value of services rendered, “not on some notion of ‘cost’ incurred . . . .”
We granted review; we now affirm.
II
Civil Code section 1717, subdivision (a), provides in relevant part as follows: “In any action on a contract, where the contract specifically provides that attorney’s fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney’s fees in addition to other costs. [¶] . . . [¶] Reasonable attorney’s fees shall be fixed by the court, and shall be an element of the costs of suit.”
Civil Code section 1717 was originally enacted to establish mutuality of remedy when a contract makes recovery of attorney fees available only *1091 for one party and to prevent the oppressive use of one-sided attorney fees provisions. (Hsu v. Abbara (1995) 9 Cal.4th 863, 870 [39 Cal.Rptr.2d 824, 891 P.2d 804].) Under its provisions, “equitable considerations must prevail over both the bargaining power of the parties and the technical rules of contractual construction.” (International Industries, Inc. v. Olen (1978) 21 Cal.3d 218, 224 [145 Cal.Rptr. 691, 577 P.2d 1031].) The provision was “designed to enable consumers and others who may be in a disadvantageous contractual bargaining position to protect their rights through the judicial process by permitting recovery of attorney’s fees incurred in litigation in the event they prevail.” (Coast Bank v. Holmes (1971) 19 Cal.App.3d 581, 597, fn. 3 [97 Cal.Rptr. 30]; see also Legis. Counsel, Enrolled Bill Mem. on Assem. Bill No. 563 (1968 Reg. Sess.) prepared for Governor Reagan (June 5, 1968) p. 1 [“The bill is intended to protect persons of limited means who sign contracts with those in a superior bargaining position.”].)
As subsequently amended in 1981, Civil Code Section 1717 applies equally to reciprocal attorney fee provisions. (Santisas v. Goodin (1998) 17 Cal.4th 599, 614 [71 Cal.Rptr.2d 830, 951 P.2d 399].) It was also amended to state that reasonable attorney fees are to be fixed by the court, and are an element of the costs of the suit. (Stats. 1981, ch. 888, § 1, p. 3399.) As explained in Sears v. Baccaglio (1998) 60 Cal.App.4th 1136, 1145 [70 Cal.Rptr.2d 769], the background materials that appear in the legislative history of the 1981 amendment observe that Civil Code section 1717 “creat[ed] a bilateral contractual obligation where a unilateral fee provision previously existed” and that “thereafter attorney’s fees were to be seen as allowed by statute, rather than by contract.” The history of the statute “consistently adheres to the theme of equity in the award of fees and demonstrates legislative intent to expand the original ambit of the statute by the addition of provisions allowing the court to determine ... the reasonableness of the fees to be awarded.” (Sears v. Baccaglio, supra, at pp. 1150-1151.) As we explained in Santisas, the statute as amended reflects the legislative purpose “to establish uniform treatment of fee recoveries in actions on contracts containing attorney fee provisions and to eliminate distinctions based on whether recovery was authorized by statute or by contract.” (Santisas v. Goodin, supra, 17 Cal.4th at p. 616; see also Trope v. Katz, supra, 11 Cal.4th at p. 289 [the legislative purpose underlying Civil Code section 1717 “is to ensure that contractual attorney fee provisions are enforced evenhandedly”].)
A
The Court of Appeal concluded that the superior court had authority under Civil Code section 1717 to award attorney fees to in-house counsel. We agree.
*1092 In Trope v. Katz, supra, 11 Cal.4th 272, we considered whether an attorney who chooses to litigate in propria persona rather than retain an attorney to represent him in an action to enforce a contract containing an attorney fee provision can recover attorney fees under Civil Code section 1717. We answered the question in the negative. We explained that, by definition, the term “attorney fees” implies the existence of an attorney-client relationship, i.e., a party receiving professional services from a lawyer. (11 Cal.4th at p. 280; see Kay v. Ehrler (1991) 499 U.S. 432, 435-436 [111 S.Ct. 1435, 1437, 113 L.Ed.2d 486] [“the word ‘attorney’ assumes an agency relationship”].)
Nor can an attorney acting in propria persona receive compensation from his opponent “simply because the time he devotes to litigating a matter on his own behalf has value.” (Trope v. Katz, supra, 11 Cal.4th at p. 285.) Such an award would constitute disparate treatment, inimical to a statute designed to establish mutuality of remedy: “If an attorney who is the prevailing party in an action to enforce a contract with an attorney fee provision can recover compensation for the time he expends litigating his case in propria persona, but a nonattorney pro se litigant cannot do so regardless of the personal and economic value of such time simply because he has chosen to pursue a different occupation, every such contract would be oppressive and one-sided.” (Id. at pp. 285-286.) We pointed out that the ordinary meaning of the phrase “attorney’s fees” is the consideration that a litigant actually pays or becomes liable to pay for legal representation, and observed that an attorney litigating in propria persona pays no such compensation. (Id. at p. 280.) We concluded that an attorney acting in propria persona should not be entitled to lost opportunity costs, as the equivalent of such incurred liability. (Id. at p. 285.)
We rejected the argument that the Legislature wished to facilitate or encourage self-representation by attorney litigants. We cited the United States Supreme Court decision in Kay v. Ehrler, supra, 499 U.S. 432, which observed that a lawmaking body may instead prefer to discourage pro se representation because it may often conflict with the general public and legislative policy favoring the effective and successful prosecution of meritorious claims. (Trope v. Katz, supra, 11 Cal.4th at p. 292.) “ ‘Even a skilled lawyer who represents himself is at a disadvantage in contested litigation. Ethical considerations may make it inappropriate for him to appear as a witness. He is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom. The *1093 adage that “a lawyer who represents himself has a fool for a client” is the product of years of experience by seasoned litigators.’ ” (Ibid., quoting Kay v. Ehrler, supra, 499 U.S. at pp. 437-438 [111 S.Ct. at p. 1438].) We expressly declined to address the question, not raised in Trope, whether in-house counsel fees could be recovered under the statute, stressing that “nothing in our opinion should be read as endorsing or precluding such an award.” (Trope v. Katz, supra, 11 Cal.4th at p. 291.)
None of the foregoing considerations apply in the case of in-house counsel. There is no problem of disparate treatment; in-house attorneys, like private counsel but unlike pro se litigants, do not represent their own personal interests and are not seeking remuneration simply for lost opportunity costs that could not be recouped by a nonlawyer. A corporation represented by in-house counsel is in an agency relationship, i.e., it has hired an attorney to provide professional legal services on its behalf. Nor is there any impediment to the effective and successful prosecution of meritorious claims because of possible ethical conflict or emotional investment in the outcome. The fact that in-house counsel is employed by the corporation does not alter the fact of representation by an independent third party. Instead, the payment of a salary to in-house attorneys is analogous to hiring a private firm on a retainer.[1]
In Garfield Bank v. Folb (1994) 25 Cal.App.4th 1804 [31 Cal.Rptr.2d 239], the Court of Appeal held that the trial court properly awarded reasonable attorney fees to the prevailing party under Civil Code section 1717 for the services of in-house counsel. It determined that an award of such fees is consistent with the “overall concern of Civil Code section 1717 . . . that [an] award of attorney fees be reciprocal and reasonable.” (25 Cal.App.4th at p. 1809.) It concluded that denying such fees would violate that principle by discriminating unfairly between in-house and private counsel performing the same services. “Because disallowing fees for in-house counsel would provide a windfall for appellant” the Court of Appeal could see no reason to distinguish between in-house and private counsel. (Ibid.)[2]
Similarly, although the federal courts have denied fees to pro se litigants, they have, under the same statutes granted attorney fees to in-house counsel. *1094 (Compare, e.g., Kay v. Ehrler, supra, 499 U.S. at p. 435 [111 S.Ct. at p. 1436] [denying attorney fees to pro se litigant who was an attorney, under 42 U.S.C. § 1988] with Perez v. Velez (S.D.N.Y. 1985) 629 F.Supp. 734, 737-738 [awarding fees to corporate counsel, under 42 U.S.C. § 1988]; see also, e.g., Pittsburgh Plate Glass Co. v. Fidelity & Cas. Co. of N.Y. (3d Cir. 1960) 281 F.2d 538, 542 [“There is no reason in law or in equity why the insurer should benefit from [the insured’s] choice to proceed with some of the work through its own legal department.”].) Drawing a distinction that also applies to the case of a corporate litigant, the Supreme Court in Kay v. Ehrler, supra, 499 U.S. at page 436, footnote 7 [111 S.Ct. at page 1437], distinguished an individual attorney acting in propria persona from an organization receiving a fee award: “[A]n organization is not comparable to a pro se litigant because the organization is always represented by counsel, whether in-house or pro bono, and thus, there is always an attorney-client relationship.”
The reasoning in Garfield Bank v. Folb, supra, 25 Cal.App.4th 1804, and the federal cases is persuasive. We discern no basis for discriminating between counsel working for a corporation in-house and private counsel engaged with respect to a specific matter or on retainer. Both are bound by the same fiduciary and ethical duties to their clients. (See General Dynamics Corp. v. Superior Court (1994) 7 Cal.4th 1164, 1190 [32 Cal.Rptr.2d 1, 876 P.2d 487].) Both are qualified to provide, and do provide, equivalent legal services. And both incur attorney fees and costs within the meaning of Civil Code section 1717 in enforcing the contract on behalf of their client.[3]
B
The superior court calculated the attorney fees to be awarded PLCM based on their market value, specifically, the reasonable in-house attorney hours multiplied by the prevailing hourly rate in the community for comparable legal services. The Court of Appeal affirmed. We agree that the award constituted reasonable attorney fees.
Civil Code section 1717 provides that “[Reasonable attorney’s fees shall be fixed by the court.” As discussed, this requirement reflects the legislative purpose “to establish uniform treatment of fee recoveries in *1095 actions on contracts containing attorney fee provisions.” (Santisas v. Goodin, supra, 17 Cal.4th at p. 616.) Consistent with that purpose, the trial court has broad authority to determine the amount of a reasonable fee. (International Industries, Inc. v. Olen, supra, 21 Cal.3d at p. 224 [“[EJquitable considerations [under Civil Code section 1717] must prevail over ... the technical rules of contractual construction.”]; Beverly Hills Properties v. Marcolino (1990) 221 Cal.App.3d Supp. 7, 12 [270 Cal.Rptr. 605] [“the award of attorney fees under section 1717, as its purposes indicate, is governed by equitable principles”]; Montgomery v. Bio-Med Specialties, Inc. (1986) 183 Cal.App.3d 1292, 1297 [228 Cal.Rptr. 709] [trial court has “wide latitude in determining the amount of an award of attorney’s fees” under Civil Code section 1717]; Vella v. Hudgins (1984) 151 Cal.App.3d 515, 522 [198 Cal.Rptr. 725] [“The amount to be awarded in attorney’s fees is left to the sound discretion of the trial court.”].) As we have explained: “The ‘experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong”—meaning that it abused its discretion. (Serrano v. Priest (1977) 20 Cal.3d 25, 49 [141 Cal.Rptr. 315, 569 P.2d 1303]; Fed-Mart Corp. v. Pell Enterprises, Inc. (1980) 111 Cal.App.3d 215, 228 [168 Cal.Rptr. 525] [an appellate court will interfere with a determination of reasonable attorney fees “only where there has been a manifest abuse of discretion”].)
As the Court of Appeal herein observed, the fee setting inquiry in California ordinarily begins with the “lodestar,” i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. “California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys’ fee award.” (Margolin v. Regional Planning Com. (1982) 134 Cal.App.3d 999, 1004-1005 [185 Cal.Rptr. 145].) The reasonable hourly rate is that prevailing in the community for similar work. (Id. at p. 1004; Shaffer v. Superior Court (1995) 33 Cal.App.4th 993, 1002 [39 Cal.Rptr.2d 506].) The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. (Serrano v. Priest, supra, 20 Cal.3d at p. 49.) Such an approach anchors the trial court’s analysis to an objective determination of the value of the attorney’s services, ensuring that the amount awarded is not arbitrary. {Id. at p. 48, fn. 23.)
Thus, applying the lodestar approach to the determination of an award under Civil Code section 1717, the Court of Appeal in Stemwest Corp. v. Ash (1986) 183 Cal.App.3d 74, 77 [227 Cal.Rptr. 804] explained: “Section 1717 provides for the payment of a ‘reasonable’ fee. After the trial court has *1096 performed the calculations [of the lodestar], it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the section 1717 award so that it is a reasonable figure.”
“It is well established that the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court .... [Citations.] The value of legal services performed in a case is a matter in which the trial court has its own expertise. [Citation.] The trial court may make its own determination of the value of the services contrary to, or without the necessity for, expert testimony. [Citations.] The trial court makes its determination after consideration of a number of factors, including the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case.” (Melnyk v. Robledo (1976) 64 Cal.App.3d 618, 623-624 [134 Cal.Rptr. 602].) Although the terms of the contract may be considered, they “do not compel any particular award.” (Vella v. Hudgins, supra, 151 Cal.App.3d at p. 520; All-West Design, Inc. v. Boozer (1986) 183 Cal.App.3d 1212, 1227 [228 Cal.Rptr. 736] [trial court was not bound by contingency agreement in awarding fees under Civil Code section 1717]; Beverly Hills Properties v. Marcolino, supra, 221 Cal.App.3d at p. Supp. 12 [affirming an award of reasonable attorney fees for pro bono legal services].)
In the present matter, the superior court based the award of attorney fees to the prevailing party, PLCM, on the number of hours expended by counsel multiplied by the prevailing market rate for comparable legal services in San Francisco, where counsel is located. No error appears. The superior court used a proper standard in calculating the fees.[4]
There was also sufficient evidence to support the amount of the award; in addition to the detailed documentation submitted by PLCM, the superior court was familiar with the quality of the services performed and the amount of time devoted to the case. The award was not clearly wrong; the superior court did not abuse its discretion.
Drexler contends that the superior court erred because it did not use a so-called cost-plus approach, based on a precise calculation of the actual salary, costs, and overhead of in-house counsel. Nothing in Civil Code *1097 section 1717 compels such an approach. In lieu of other authority, Drexler cites Trope v. Katz, supra, 11 Cal.4th at page 280, to the effect that the term “attorney’s fees” is generally defined as meaning the consideration that a litigant “actually pays or becomes liable to pay in exchange for legal representation.” The point is inapposite. The question of how to measure attorney fees was not raised in Trope, which expressly involved only the “narrow issue” whether pro se attorney litigants could recover attorney fees. (Id. at p. 287.) As we reiterated therein, the language of an opinion must be construed with reference to the facts presented by the case; the positive authority of a decision is coextensive only with such facts. (Id. at p. 284.)[5]
That is not to say that reasonable attorney fees under Civil Code section 1717 will not reflect many of the same factors considered in a cost-plus approach. Moreover, generally prevailing market rates necessarily take into consideration such factors as salaries, overhead, the costs of support personnel, and incidental expenses. However, as the Court of Appeal observed, the market value approach has the virtue of being predictable for the parties and easy to administer. By contrast, the cost-plus approach, in addition to being cumbersome, intrusive, and costly to apply, may distort the incentives for settlement and reward inefficiency. For these reasons, we conclude that the lodestar method, as applied to the calculation of attorney fees for in-house counsel is presumably reasonable, although in exceptional circumstances, the trial court is not precluded from using other methodologies.
Nor are we persuaded by Drexler’s argument that awarding fees to in-house counsel based on prevailing market rates for attorney services, as a general matter, “most likely constitutes an unjustified windfall.” As amicus curiae American Corporate Counsel Association points out, it is not always a cost-per-hour decision that drives a client to prefer the use of an in-house *1098 attorney. Drexler presented no evidence that the costs, in terms of overhead, salary, and other compensation for corporate in-house counsel, were necessarily less than the market rate for a law firm in the same location. There was no evidence in the record as to the exact amount defendants spent on this matter; nor did Drexler ever seek to ascertain that amount. In-house counsel did not bill PLCM for hourly work on this matter. As discussed, PLCM is charged annually, on a prospective basis, a proportional share of the expenses of operating the law division; it is unclear whether such annual charge-backs include all cost items comprising total overhead. The only evidence in the record, however, undercuts Drexler’s assertion that PLCM’s expenses for in-house counsel were less than the market rate for private counsel; in-house operating expenses in this matter were, instead, “analogous to those of other law offices, e.g., attorney and support-staff compensation, rental of office space and equipment, supplies, travel, etc.” Indeed, counsel for PCLM estimated that actual expenses for in-house counsel in this matter would have exceeded the market rate. (Cf. Garfield Bank v. Folb, supra, 25 Cal.App.4th at p. 1809 [affirming use of lodestar approach in calculating attorney fee award for in-house counsel, and observing that in-house counsel’s actual salary was “due to [his] relationship with [his employer] and not his experience in the market”].)
“ ‘We do not want “a [trial] court, in setting an attorney’s fee, [to] become enmeshed in a meticulous analysis of every detailed facet of the professional representation. It. . .is not our intention that the inquiry into the adequacy of the fee assume massive proportions, perhaps dwarfing the case in chief.” ’ ” (Serrano v. Unruh (1982) 32 Cal.3d 621, 642 [186 Cal.Rptr. 754, 652 P.2d 985].) Indeed, such wholly ancillary litigation on the question of salaries and costs and the internal economics of a law office could lead to an increase rather than a diminution of the costs of fee awards under Civil Code section 1717.
Requiring trial courts in all instances to determine reasonable attorney fees based on actual costs and overhead rather than an objective standard of reasonableness, i.e., the prevailing market value of comparable legal services, is neither appropriate nor practical; it “would be an unwarranted burden and bad public policy.” (Shaffer v. Superior Court, supra, 33 Cal.App.4th at p. 1003.)
III
For the foregoing reasons, the judgment of the Court of Appeal is affirmed.
George, C. J., and Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

Ionically, Drexler, who appeared in propria persona in superior court and in the Court of Appeal, urges that corporations “should be encouraged to seek independent review of their legal situations by independent counsel,” in the interest of encouraging settlement and avoiding unmeritorious claims. We disagree that in-house lawyers are inherently biased advisors to their corporate employers; on the contrary, to the extent they share management’s business orientation, it would appear that in-house counsel have every incentive to analyze legal issues objectively and professionally and to conduct litigation in a cost-effective manner.

Drexler suggests that Garfield Bank v. Folb, supra, 25 Cal.App.4th 1804, was “brought into question” by Trope. Not so. Trope disapproved Garfield Bank only to the extent that it referred, in passing, to authority for awarding attorney fees to pro se litigants. (Trope v. Katz, *1094 supra, 11 Cal.4th at p. 292 [“We emphasize, however, that we express no opinion regarding any other aspect of the reasoning or the holding[] of the . . . Court of Appeal decision[]” in Garfield Bank].)

Drexler asserts that Aon Corporation engaged in the unlawful practice of law because its in-house counsel, Aon Corporation Law Division, represented separate corporate entities, including subsidiary PLCM!, and charged for those legal services. The point, which was not raised below or in the petition for review by this court, was waived.

In-house counsel for PLCM did not keep contemporaneous daily billing records for work on this matter; for the purposes of the fee request, PLCM prepared a detailed reconstruction of time spent on specific legal tasks performed in the case. We note that maintaining contemporaneous records by in-house counsel of hours spent on a case involving a possible request for attorney fees would facilitate accurate calculation of the lodestar and minimize possible inaccuracies in reconstructing time spent on a matter months or even years after the fact.

Our reference in Trope to the general definition of “attorney’s fees” as the sum a litigant “actually pays or becomes liable to pay” for legal representation (11 Cal.4th at p. 280) was not intended to imply that fees can be recovered only when, and to the extent that, a litigant incurs fees on a fee-for-service basis, a question not raised therein. To the extent it suggests otherwise, relying on the same language in Trope, San Dieguito Partnership v. San Dieguito River Valley Regional etc. Authority (1998) 61 Cal.App.4th 910 [72 Cal.Rptr.2d 91] is disapproved. The concurring and dissenting opinion incorrectly concludes that the contract entered by the parties herein, merely by referring to costs “incurred,” required the court to apply a cost-plus approach to calculate “reasonable” fees under Civil Code section 1717. The parties did not agree to any particular method for calculating fees or purport to establish a specific monetary cap on attorney fees as in Reynolds Metals Co. v. Alperson (1979) 25 Cal.3d 124 [158 Cal.Rptr. 1, 599 P.2d 83]. Nor did Reynolds state or imply that a cost-plus method must be applied or that use of the lodestar approach is not “reasonable” under Civil Code section 1717.