[No. B133171. Second Dist., Div. Seven. Feb. 22, 2001.]

ARTHUR GILBERT, Plaintiff and Appellant, v.
MASTER WASHER & STAMPING CO., INC., Defendant and
Respondent.

MASTER WASHER & STAMPING CO., INC., Plaintiff and Respondent,
v.

ARTHUR GILBERT et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication* with the exception of part I and certain portions of the sections headed "Facts and Proceedings Below" and "Disposition." The portions to be omitted are indicated by means of brackets.

COUNSEL

Gernsbacher & Associates, Eric Brown; Gernsbacher & McGarrigle and Paul B. Beach for Plaintiff and Appellant and for Defendants and Appellants.

Law Offices of Jay F. Stocker and Jay F. Stocker for Plaintiff and Respondent and for Defendant and Respondent.

OPINION

**JOHNSON, J.**—In the published portion of this case we hold a lawyer represented by other members of his law firm is entitled to recover reasonable attorney fees where the representation involved the lawyer's personal interests and not those of the firm.

### FACTS AND PROCEEDINGS BELOW

This case arises out of the landlord-tenant relationship between appellant Arthur Gilbert and respondent Master Washer & Stamping Co., Inc. However, this appeal focuses on postjudgment orders regarding attorney fees and costs, and does not concern the merits of the parties' underlying claims against one another.

Gilbert filed a complaint against Master Washer, Los Angeles Superior Court case No. BC141326, on December 22, 1995, seeking damages for breach of lease, and attorney fees pursuant to the lease between the parties. Master Washer later filed a complaint in a separate action, Los Angeles Superior Court case No. BC142051, seeking damages for breach of contract and conversion of its property by Gilbert. Master Washer's complaint also named Gilbert's attorney, appellant David Gernsbacher, as a defendant based on his alleged role in preventing Master Washer from recovering its property from the leased premises. The cases were consolidated and assigned to Judge Ralph W. Dau.

Gernsbacher demurred to Master Washer's first cause of action for breach of lease, and the trial court sustained the demurrer without leave to amend on April 4, 1996.

On February 10, 1998, Gilbert obtained summary adjudication in his favor on Master Washer's breach of lease claim. This ruling also disposed of Master Washer's defenses to Gilbert's claim for breach of lease. The same

day, Gernsbacher obtained summary judgment as to all remaining causes of action in Master Washer's complaint.

Trial of the consolidated actions commenced on January 7, 1999. On January 14, 1999, Gilbert and Master Washer entered into a stipulation for judgment (hereinafter the Stipulation) whereby Master Washer admitted liability in Gilbert's breach of lease action.

[ ]*

On February 24, 1999, Gilbert filed a proposed judgment pursuant to the Stipulation.[1]

[ ]*

On or about March 1, 1999, Gilbert and Gernsbacher filed a second proposed judgment providing in pertinent part as follows.

"On April 4, 1996, in Case No. BC 142051 (hereinafter the 'Master Washer Action') the Court sustained without leave to amend the demurrer of Defendant David Gernsbacher . . . to the First Cause of Action for Breach of Lease of Plaintiff Master Washer & Stamping Co., Inc. . . . and, on February 10, 1998, the Court granted Defendant Gernsbacher's Motion for Summary Judgment/Adjudication as to the remainder of Plaintiff Master Washer's Complaint.

"On January 7, 1999, these consolidated causes came on regularly for trial before Judge Ralph W. Dau. . . .

"On January 14, 1999, in the Gilbert Action, Plaintiff Gilbert and Defendant Master Washer entered into a Stipulation under which Defendant Master Washer admitted liability on Plaintiff Gilbert's complaint for breach of lease and, further, admitted that Plaintiff Gilbert's damages for breach of lease total Eighty-Five Thousand Dollars ($85,000), stipulating that judgment be entered against Defendant Master Washer and in favor of Plaintiff Gilbert setting forth said $85,000 in damages.

"The Court has filed its Statement of Decision in the Master Washer Action.

"Accordingly,

---

*See footnote, *ante*, page 212.

[1]This judgment was never signed or entered by the trial court.

"IT IS ORDERED, ADJUDGED AND DECREED as follows:

"1. That, in the Master Washer Action, Plaintiff Master Washer shall take nothing as against Defendant Gernsbacher, that the Master Washer Action against Defendant Gernsbacher be and hereby is dismissed, and that Defendant Gernsbacher shall recover from Plaintiff Master Washer his costs of suit in the amount of $ _____ and attorneys' fees in the amount of $ _____;"

[ ]*

On June 15, 1999, the trial court issued an order denying Gernsbacher's motion to fix his attorney fees as costs, ruling because Gernsbacher was represented by his own law firm, he was not entitled to an award of fees pursuant to *Trope v. Katz*,[3] in which the California Supreme Court held an attorney who litigates in propria persona may not recover attorney fees pursuant to Civil Code section 1717.

Gilbert and Gernsbacher both appeal from the trial court's denial of their separate motions to fix attorney fees as costs.[4]

## DISCUSSION

I. *Master Washer's Motion to Amend the Judgment Did Not Conform with the Requirements of Code of Civil Procedure Section 663a, Therefore the Trial Court Erred in Amending the Judgment.*

[ ]*

II. *An Attorney Who Is Represented by Other Members of His or Her Law Firm May Be Entitled to Recover Attorney Fees Under Civil Code Section 1717; Therefore the Trial Court Erred in Denying Gernsbacher's Motion to Fix Attorney Fees As Costs.*

California follows the so-called American rule, whereby each party to a lawsuit must ordinarily pay his or her own attorney fees.[11] However, this rule does not apply where, as in this case, the parties have agreed to allocate

---

*See footnote, *ante,* page 212.

[3]*Trope v. Katz* (1995) 11 Cal.4th 274, 292 [45 Cal.Rptr.2d 241, 902 P.2d 259].

[4]The lease underlying the litigation includes a provision for attorney fees to the successful party "by reason of any action to which Lessor shall be made party because of this lease."

[11]*Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 504 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763].

attorney fees by contract.[12] Such agreements are governed by Civil Code section 1717, which provides in pertinent part "(a) In any action on a contract, where the contract specifically provides that attorneys' fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs. [¶] . . . [¶] Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit."

█ The trial court found Gernsbacher was not entitled to attorney fees because he was represented by his own law firm, Gernsbacher & McGarrigle, APC, and did not present evidence he was "obligated to pay" the legal fees incurred on his behalf by the attorneys representing him in this matter. Gernsbacher argues he is entitled to his attorney fees because he was sued personally and was represented by other counsel within the law firm of which he is a member. Thus he did not represent himself in propria persona. We agree with Gernsbacher and therefore we reverse the trial court's order denying his motion to fix attorney fees as costs and remand for further proceedings.

A. *An Attorney Representing Himself or Herself In Propria Persona May Not Recover Contractual Attorney Fees Pursuant to Civil Code Section 1717. However, a Corporation May Recover Fees Incurred by Its In-house Counsel.*

█ In *Trope v. Katz,*[13] the law firm Trope and Trope, representing itself in propria persona, sued a former client for fees.[14] The former client filed a cross-complaint for malpractice, and a trial of the entire matter resulted in a

---

[12]*International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1182 [101 Cal.Rptr.2d 532] ("Parties may agree by contract for the payment of attorney fees in actions relating to the contract"). See also Code of Civil Procedure section 1021 ("Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . .").

[13]*Trope v. Katz, supra,* 11 Cal.4th 274.

[14]The party litigants in *Trope* were actually the individual lawyers, Sorrell Trope and Eugene L. Trope, who were, according to the Court of Appeal opinion in *Trope v. Katz,* No. B073244, "engaged in the practice of law as the firm of Trope and Trope." The law firm Trope and Trope was not a party to the action and there is no indication it had any independent legal existence. Indeed, the Supreme Court treated the firm and the attorneys as interchangeable, framing the issue in the case as "whether an attorney who successfully represents himself in litigation may recover attorney fees when such fees are provided for by contract or statute." (*Trope v. Katz, supra,* 11 Cal.4th 274, 278.) Therefore the Supreme Court's references to "Trope & Trope" or "the firm" are best understood as shorthand references to party litigants Sorrell Trope and Eugene L. Trope, the two attorneys who

net verdict in favor of Trope and Trope.[15] Trope and Trope moved for an award of attorney fees under the attorney fee provision in the parties' retainer agreement.[16] The trial court found "although Trope & Trope would have been entitled to attorney fees under the 1985 agreement if it had retained an attorney, it was barred from recovering such fees because it had represented itself."[17]

The California Supreme Court affirmed the trial court's action, holding "an attorney who chooses to litigate in propria persona rather than retain another attorney to represent him in an action to enforce a contract . . . cannot recover [attorney] fees under [Civil Code] section 1717."[18] The high court explained Civil Code section 1717 authorizes an award of "attorney's fees," and the plain meaning of the term "both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation. An attorney litigating in propria persona pays no such compensation."[19]

*Trope* rejected Trope and Trope's argument they were entitled to an award of attorney fees "simply because the time [an attorney] devotes to litigating a matter on his own behalf has value."[20] Noting the time of any litigant is valuable, the Supreme Court concluded "the issue is whether in enacting section 1717 the Legislature intended to allow attorneys who represent themselves to recover 'reasonable attorney's fees' for the time and effort they have expended and the professional opportunities they have lost as a result of their decision to litigate a contract dispute in propria persona, even though they have not actually paid or become liable to pay any consideration in exchange for legal representation. . . . [W]e believe the Legislature did not so intend."[21]

The Supreme Court in *Trope* also rejected Trope and Trope's suggestion the Legislature may have wished to encourage attorneys to represent themselves in litigation. Citing to the United States Supreme Court's decision in *Kay v. Ehrler*,[22] the court observed "a lawmaking body may instead prefer to discourage attorneys from electing to appear in propria persona because such

represented themselves in propria persona. (Although the Court of Appeal opinion in *Trope v. Katz* is not published, we may take judicial notice thereof as a court record pursuant to Evidence Code section 452, subdivision (d)(1).)

[15]*Trope v. Katz, supra*, 11 Cal.4th at page 283.
[16]*Trope v. Katz, supra*, 11 Cal.4th at page 283.
[17]*Trope v. Katz, supra*, 11 Cal.4th at page 278.
[18]*Trope v. Katz, supra*, 11 Cal.4th 274, 277.
[19]*Trope v. Katz, supra*, 11 Cal.4th at page 280.
[20]*Trope v. Katz, supra*, 11 Cal.4th 274, 285.
[21]*Trope v. Katz, supra*, 11 Cal.4th at page 283, italics omitted.
[22]*Kay v. Ehrler* (1991) 499 U.S. 432 [111 S.Ct. 1435, 113 L.Ed.2d 486].

self-representation may often conflict with the general public and legislative policy favoring the effective and successful prosecution of meritorious claims"[23] Thus *Trope* stands for the proposition an attorney who represents him or herself in propria persona may not recover the value of his or her time as attorney fees pursuant to Civil Code section 1717.

More recently, in *PLCM Group, Inc. v. Drexler,*[24] the California Supreme Court revisited the attorney fees issue and held a corporate litigant was entitled to recover attorney fees for work performed by in-house counsel, even though such counsel were employees of the corporate litigant.[25] In *PLCM,* the Supreme Court explained its holding in *Trope v. Katz*[26] was based largely on the lack of any attorney-client relationship in the case of an attorney litigating his or her own contract dispute: "[in *Trope*, w]e explained that, by definition, the term 'attorney fees' implies the existence of an attorney-client relationship, i.e., a party receiving professional services from a lawyer. [Citations.]"[27] But the Supreme Court in *PLCM Group* found such a relationship *does* exist where a corporation is represented by its in-house counsel.[28]

*PLCM Group* emphasized none of the problems relating to the pro se attorney litigants in *Trope* applied in the case of in-house counsel: "There is no problem of disparate treatment; in-house attorneys, like private counsel but unlike pro se litigants, do not represent their own personal interests and are not seeking remuneration simply for lost opportunity costs that could not be recouped by a nonlawyer. A corporation represented by in-house counsel is in an agency relationship, i.e., it has hired an attorney to provide professional legal services on its behalf. Nor is there any impediment to the effective and successful prosecution of meritorious claims because of possible ethical conflict or emotional investment in the outcome. The fact that [the corporation employs in-house counsel] does not alter the fact of representation by an independent third party. Instead, the payment of a salary to in-house attorneys is analogous to hiring a private firm on a retainer."[29] Therefore, it held "We discern no basis for discriminating between counsel working for a corporation in-house and private counsel engaged with respect to a specific matter or on retainer. Both are bound by the same fiduciary and ethical duties to their clients. [Citations.] Both are qualified to provide, and do provide, equivalent legal services. And both incur attorney fees and costs

---

[23]*Trope v. Katz, supra,* 11 Cal.4th 274, 292, citing *Kay v. Ehrler, supra,* 499 U.S. 432.
[24]*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084 [95 Cal.Rptr.2d 198, 997 P.2d 511].
[25]*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at page 1092.
[26]*Trope v. Katz, supra,* 11 Cal.4th 274.
[27]*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084, 1092.
[28]*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at page 1093.
[29]*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084, 1092-1093.

within the meaning of Civil Code section 1717 in enforcing the contract on behalf of their client."[30]

## B. The Policy Considerations in Trope v. Katz Do Not Preclude Gernsbacher's Recovery of Attorney Fees Because He Is Not a Litigant In Propria Persona.

 Having examined the policy considerations leading to the *Trope* and *PLCM Group* decisions, we apply those considerations to the case before us. We hold Gernsbacher, as an attorney litigant represented by other attorneys in his firm, is not a litigant in propria persona and thus *Trope* does not bar his recovery of reasonable attorney fees under Civil Code section 1717.

### 1. An Attorney Represented by Members of His or Her Own Law Firm "Incurs" Attorney Fees.

While *Trope* defines "incurring" an attorney fee as "becoming obligated to pay for it,"[31] such an "obligation" is broadly defined as necessary to fulfill the purpose of Civil Code section 1717. In *International Billing Services, Inc. v. Emigh*,[32] for example, the Court of Appeal held prevailing litigants were entitled to an award of attorney fees, even though the fees had been paid by their employer.[33] Noting the litigants had agreed to reimburse the employer in the event they obtained a fee award pursuant to Civil Code section 1717, the court held they "became liable to pay the fee even if they were not the source of payment the attorney agreed to look to first."[34] Similarly, in *Staples v. Hoefke*,[35] the court concluded a defendant was entitled to recover attorney fees despite the fact his fees had been paid by his insurer.[36]

Moreover, under *PLCM Group*, the trial court has wide discretion to fix a reasonable amount of attorney fees, and is not limited to the amount actually

[30]*PLCM Group, Inc. v. Drexler, supra*, 22 Cal.4th at page 1094.

[31]*Trope v. Katz, supra*, 11 Cal.4th 274, 280.

[32]*International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175 [101 Cal.Rptr.2d 532].

[33]*International Billing Services, Inc. v. Emigh, supra*, 84 Cal.App.4th at page 1193 ("[i]t is difficult to see how [plaintiff] is aggrieved by the serendipity of the [defendants], who discovered how to defend the lawsuit without having to pay out of their pockets").

[34]*International Billing Services, Inc. v. Emigh, supra*, 84 Cal.app.4th at page 1192, italics omitted.

[35]*Staples v. Hoefke* (1987) 189 Cal.App.3d 1397 [235 Cal.Rptr. 165].

[36]*Staples v. Hoefke, supra*, 189 Cal.App.3d at page 1410 ("we can perceive of no reason why plaintiffs should profit from defendant Hoefke's foresight in obtaining insurance coverage").

paid by the prevailing party.[37] In *PLCM Group,* the Supreme Court held a fee award for in-house counsel was properly based on the number of hours expended by counsel multiplied by the prevailing market rate for comparable legal services where counsel is located. The Supreme Court held the trial court was not, as the losing party argued, limited to the "cost-plus approach, based on a precise calculation of the actual salary, costs, and overhead of in-house counsel."[38]

Thus, a member of a law firm who is represented by other attorneys in the firm "incurs" fees within the meaning of Civil Code section 1717. Either the represented attorney will experience a reduced draw from the partnership (or a reduced salary from the professional corporation) to account for the amount of time his or her partners or colleagues have specifically devoted to his or her representation, or absorb a share of the reduction in other income the firm experiences because of the time spent on the case. This is different from the "opportunity costs" the attorney loses while he or she is personally involved in the same case, because the economic detriment is caused not by the expenditure of his or her own time, but by other attorneys working on his or her behalf.

Nevertheless, in this case the trial court denied Gernsbacher's motion to fix attorney fees as costs in part because it believed the declaration of McGarrigle, Gernsbacher's attorney, did not adequately establish Gernsbacher had "incurred" attorney fees. Although the trial court stated "nowhere does the declaration state that attorney Gernsbacher is obligated to pay this or any other amount to his firm for his representation in this matter," this conclusion is factually inaccurate. Mr. McGarrigle's declaration does indeed state "the total amount of costs and attorneys' fees *incurred* by Defendant [Gernsbacher]." Master Washer did not present any evidence to rebut this statement, and in the absence of any reason to think otherwise, the word

---

[37]*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084, 1096 (" 'the determination of what constitutes reasonable attorney fees is committed to the discretion of the trial court' "). See also *Beverly Hills Properties v. Marcolino* (1990) 221 Cal.App.3d Supp. 7 [270 Cal.Rptr. 605] (party who receives free legal services from pro bono attorney, and thus incurs no attorney fees at all, is nonetheless entitled to recover attorney fees under Civ. Code, § 1717); *Vella v. Hudgins* (1984) 151 Cal.App.3d 515, 520 [198 Cal.Rptr. 725] (while terms of the contract between attorney and client may be considered by trial court, such terms "do not compel any particular award"); *All-West Design, Inc. v. Boozer* (183 Cal.App.3d 1212, 1227 [228 Cal.Rptr. 736] (trial court not bound by terms of contingency fee agreement in determining amount of reasonable fees under Civ. Code, § 1717).

[38]*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at page 1096. See also *Balkind v. Telluride Mountain Title Co.* (Colo.Ct.App. 2000) 8 P.3d 581, 588 ("The market-rate approach also has the virtue of being predictable for the parties and easy to administer, whereas the cost-plus approach is cumbersome, intrusive, costly to apply, and may distort the incentives for settlement and reward inefficiency.").

"incurred" in Mr. McGarrigle's declaration should be interpreted as it is used in Civil Code section 1717.[39]

### 2. An Attorney Represented by Members of His or Her Own Law Firm Is Party to an Attorney-client Relationship.

*Trope v. Katz*,[40] denied fees to an attorney litigant acting in propria persona based in large part on the absence of an attorney-client relationship, because a pro se attorney litigant does not become liable to pay fees "in exchange for legal representation."[41] By contrast, *PLCM Group* approved a fee award for the representation of in-house counsel because unlike an individual attorney acting in propria persona, " 'an organization is always represented by counsel. . . . and thus, there is always an attorney-client relationship.' "[42]

There can be no question an attorney-client relationship is also present where an attorney litigant is represented by other attorneys in his or her own firm. In this case, Messrs. Beach and McGarrigle of Gernsbacher & McGarrigle, like the in-house counsel in *PLCM Group* but unlike Messrs. Trope and Trope in *Trope,* represented not their personal interests or even those of their law firm, but the separate and distinct interests of Gernsbacher himself.[43] Beach and McGarrigle were Gernsbacher's agents, and he was the recipient of legal services performed by them on his behalf.[44]

As our Supreme Court recognized in *PLCM Group*, the introduction of an objective third party as counsel for an attorney litigant promotes "the general

---

[39]See *International Billing Services, Inc. v. Emigh supra*, 84 Cal.App.4th 1175, 1192 (for purposes of Civ. Code, § 1717, "To 'incur' means 'To run or fall into (some consequence, usually undesirable or injurious); to become through one's own action liable or subject to; to bring upon oneself.' (5 Oxford English Dict. (2d ed. 1933) p. 188, col. b.; see Black's Law Dict. (7th ed. 1999) p. 771, col. b. ['To suffer or bring on oneself (a liability or expense)']; 1 Abbott's Law Dict. (1879) p. 595, col. b [liability 'cast upon them by act or operation of law'].) The California Supreme Court has construed the term as used in section 1717 to mean generally ' "become liable" for' a fee, 'i.e., to become obligated to pay for it.' [Citation.]." [italics omitted]).

[40]*Trope v. Katz, supra*, 11 Cal.4th 274.

[41]*Trope v. Katz, supra*, 11 Cal.4th at page 280.

[42]*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084, 1094.

[43]Unlike the law firm Trope and Trope, Gernsbacher & McGarrigle has an independent existence as a professional corporation. Furthermore, Gernsbacher was being sued personally; the professional corporation was not a party to the lawsuit.

[44]Indeed, while Gernsbacher's situation is somewhat similar to that of the corporation in *PLCM,* it is even more analogous to that of any litigant who retains private counsel to represent him or her in a lawsuit.

public and legislative policy favoring the effective and successful prosecution of meritorious claims [or defense of non-meritorious claims]."[45] It recognized " ' "Even a skilled lawyer who represents himself is at a disadvantage in contested litigation. Ethical considerations may make it inappropriate for him to appear as a witness. He is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom. The adage that 'a lawyer who represents himself has a fool for a client' is the product of years of experience by seasoned litigators." ' "[46] An attorney who asks his partners or associates to represent him, by contrast, is no fool.

### 3. Permitting an Attorney Represented by Members of His or Her Own Law Firm to Recover Fees Under Civil Code Section 1717 Does Not Lead to Inequitable Application of the Statute.

In *Trope v. Katz*,[47] the Supreme Court held it would be inequitable to permit attorneys, but not other litigants, to recover fees when they litigate in propria persona.[48] It held such an outcome "would conflict with the legislative purpose of section 1717 . . . to establish mutuality of remedy when a contractual provision makes recovery of attorney fees available to only one party, and to prevent the oppressive use of one-sided attorney fee provisions. [Citations.] If an attorney who is the prevailing party in an action to enforce a contract with an attorney fee provision can recover compensation for the time he expends litigating his case in propria persona, but a nonattorney pro se litigant cannot do so regardless of the personal and economic value of such time simply because he has chosen to pursue a different occupation, every such contract would be oppressive and one-sided."[49]

As we have seen, this consideration is absent where an attorney litigant is represented by members of his or her firm, because like a corporation represented by in-house counsel, the represented attorney seeks to recover fees for work done by others on his behalf. Indeed, it would be inequitable in the extreme to permit Gernsbacher to recover fees incurred by outside counsel, but deny him such recovery merely because his counsel are members of the same law firm as he.

---

[45]*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th 1084, 1092.
[46]*PLCM Group, Inc. v. Drexler, supra,* 22 Cal.4th at pages 1092-1093.
[47]*Trope v. Katz, supra,* 11 Cal.4th 274.
[48]*Trope v. Katz, supra,* 11 Cal.4th at page 285.
[49]*Trope v. Katz, supra,* 11 Cal.4th at pages 285-286, italics omitted.

### C. *The Matter Must Be Remanded for Ruling on the Remaining Issues Presented in Gernsbacher's Motion to Fix Attorney Fees.*

Because the trial court erroneously ruled *Trope v. Katz*[50] precluded Gernsbacher from recovering his attorney fees, it did not reach the other issues raised in his motion to fix attorney fees as costs, namely whether Gernsbacher is the prevailing party against Master Washer, and the amount of attorney fees, if any, he is entitled to recover. Accordingly, the trial court's June 15, 1999 order denying Gernsbacher's motion to fix his attorney fees as costs is reversed, and the matter is remanded to the trial court for a determination of these issues.

### DISPOSITION

[ ]*

The trial court's June 15, 1999 order denying Gernsbacher's motion to fix attorney fees as costs is reversed and the matter is remanded to the trial court with directions to make a new ruling on Gernsbacher's motion to fix attorney fees as costs, including whether Gernsbacher is a prevailing party entitled to contractual attorney fees, and the amount, if any, of reasonable attorney fees to which he is entitled. The parties shall bear their own costs on appeal.

Lillie, P. J., and Woods, J., concurred.

On March 13, 2001, the opinion was modified to read as printed above.

---

[50]*Trope v. Katz, supra,* 11 Cal.4th 274.
*See footnote, *ante*, page 212.