Filed 1/8/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| PAMELA POLLOCK, | B320574 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. BC676917 |
| v. | |
| MICHAEL KELSO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lia Martin, Judge. Affirmed.

Lipeles Law Group, Kevin A. Lipeles, Thomas H. Schelly, and Julian Bellenghi for Plaintiff and Respondent.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre and Tracy Forbath for Defendant and Appellant.

————————————

We affirm an attorney fee award.

I

In 2018, Pamela Pollock sued her supervisor Michael Kelso for sexual harassment and, on grounds of race, refusing to promote her. Pollock alleged Kelso asked her for sexual intercourse in 2016 and, after she rejected him, he promoted five less qualified people of other races to positions she sought. The trial court ruled Pollock's suit was time-barred. We affirmed. (*Ducksworth v. Tri-Modal Distribution Services* (2020) 47 Cal.App.5th 532.)

In 2021, the Supreme Court reversed and rendered three holdings. First, the statute of limitations in this type of case begins to run when plaintiffs knew or should have known of the adverse promotion decision. (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 941.) Second, the defense bears the burden on this issue. (*Id.* at p. 947.) Third, under the Fair Employment and Housing Act, an appellate court may not award costs or fees on appeal to a prevailing defendant without first determining that plaintiff's action was frivolous, unreasonable, or groundless when brought, or that plaintiff continued to litigate after it clearly became so. (*Id.* at pp. 947–951.)

Following the Supreme Court's directions, in 2021 we remanded and ordered costs for Pollock.

In the trial court, Pollock moved for $526,475.63 in attorney fees under subdivision (c)(6) of Government Code section 12965 in late 2021. In March 2022, the trial court awarded $493,577.10. Kelso filed his notice of appeal on May 9, 2022.

The trial court set a trial date of May 1, 2023.

Before that trial date, in February 2023, Kelso and Pollock settled the bulk of their case. Pollock moved to dismiss her

2

underlying case with prejudice, except for the attorney fee award that Kelso was appealing. The trial court was to retain jurisdiction regarding the fee award. Other terms of the settlement were confidential.

In this court, Pollock offers to provide us with the confidential settlement agreement in camera to substantiate that it expressly identifies her as the prevailing party against Kelso. Kelso objects, claiming this would be an improper augmentation of the record. In support of this claim, Kelso cites Rule 8.155(a)(1)(A) of the California Rules of Court, which empowers us to order certain record augmentations. This rule does not prohibit stipulated augmentations.

On April 20, 2023, the parties filed a stipulation regarding the settlement with the trial court. The court signed their stipulated order, which stated "The court DISMISSES this entire action, case number BC676917, with prejudice as to all parties and all causes of action." The court retained jurisdiction regarding the fee award.

## II

As an initial matter, we deny Pollock's motion to dismiss Kelso's appeal. Pollock claims we lack jurisdiction over an appeal from what she describes as a merely interlocutory order. Kelso is appealing, however, from a final collateral order. Pollock also complains of an insubstantial defect in Kelso's notice of appeal. This notice preserved Kelso's right to appeal. (See *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882.) Pollock further notes her attorney, in the course of perfecting this appeal, sent Kelso's lawyer an email but received no response. This lapse of professionalism is discreditable but not a basis for dismissing Kelso's appeal.

### III

Moving now to the merits, we affirm the fee award.

### A

In civil actions brought under the Fair Employment and Housing Act, the trial court, in its discretion, may award a reasonable attorney fee to the *prevailing party*. (Gov. Code, § 12965, subd. (c)(6).)

Determining the prevailing party sometimes is easy and sometimes not. In many cases, it can be obvious one side won and the other lost. But other outcomes can be hard to figure. Making judgments about who, if anyone, prevailed can be intricate and nuanced.

Trial courts have an unparalleled perspective on who is a prevailing party. They are uniquely positioned to observe telltale ephemera, such as the parties' reflexive reactions when the verdict is announced. (E.g., *Olive v. Gen. Nutrition Centers Inc.* (2018) 30 Cal.App.5th 804, 823 [*no* prevailing party when trial court saw *both* parties were visibly dismayed by the jury verdict].)

By statute, the fundamental factor governing fee awards is reasonableness. (Gov. Code, § 12965, subd. (c)(6).) Quantifying this factor requires the court to exercise discretion after surveying the case's landscape. (See *Snoeck v. ExakTime Innovations, Inc.* (2023) 96 Cal.App.5th 908, 920–921 (*Snoeck*).)

Trial judges are in the best position to evaluate attorney fee awards. (See *Laffitte v. Robert Half Internat. Inc.* (2016) 1 Cal.5th 480, 488 (*Laffitte*).) They see the lawyers' day to day labors and can judge quality over the long haul. Awarding fees is a recurring task on a trial court's docket. Experienced trial

4

judges routinely see fee applications and develop a sense of what is customary and reasonable.

We owe considerable deference to trial court decisionmaking about attorney fee awards and thus review for an abuse of discretion. We presume the trial court's award is reasonable and the court considered appropriate factors in reaching its decision, even though the court may not have rendered a written ruling. The trial court is not required to state each charge it finds reasonable or unreasonable, nor need it issue a statement of decision. (*Snoeck, supra*, 96 Cal.App.5th at pp. 920–921.) We will not disturb the trial court's judgment unless it is clearly wrong. We accept the trial court's factual findings supported by substantial evidence, and we imply findings to support the court's order. The burden is on the objector to show error. (*Laffitte, supra*, 1 Cal.5th at p. 488; *Rojas v. HSBC Card Services Inc.* (2023) 93 Cal.App.5th 860, 873.)

Two methods for determining whether a fee is reasonable are the lodestar formula and the percentage-of-recovery approach. (See *Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 744–745.) On this choice, parties and lawyers can switch preferences opportunistically. (*Ibid.*) The two methods can serve as cross checks on each other. (See *Lafitte, supra*, 1 Cal.5th at p. 506.)

Equitable factors can be pertinent in calculating a reasonable fee. (See *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)

B

Kelso argues that, first, Pollock was not a prevailing party, and second, the award was too high.

We begin with the prevailing party issue.

For purposes of analysis, we assume the trial court erred by concluding before trial that Pollock was a prevailing party. Since then, however, the parties have settled and the case is concluded, save for this fee issue. We hold any assumed error was harmless.

When the trial court set a trial date and it grew near, Kelso decided to settle. Kelso declines to lodge the settlement agreement with this court in camera, which Pollock's counsel maintains expressly identifies Pollock as the prevailing party. At oral argument, Pollock's attorney brought the settlement document to counsel table, but Kelso's appellate attorney claimed she had never seen it. She declined to view it. Kelso's reluctance, and Pollock's willingness, reveal that Pollock won something tangible. Pollock's gain postdates the trial court's fee award, but it has significance for this appeal: the case is over and, as a practical matter, the time is ripe to consider a fee award.

We thus turn to issue number two: the *size* of the award.

Kelso maintains the amount of the trial court's fee award—$493,577.10—is unreasonable. The court abused its discretion, Kelso asserts, by failing to apportion the award among "the defendants involved in the appeal." Kelso, however, fails to identify who these other defendants were, how their issues might have been different from Kelso's, and in what degree. Kelso forfeited this argument by failing to elaborate his argument in meaningful detail in his opening brief. It is not fair for Kelso to ask this court to spell out the particulars of his vague argument. His approach, were we to indulge it, would not give Pollock reasonable notice of the thrust she must parry.

Kelso complains Pollock's counsel charged too high an hourly rate. One lawyer submitted a declaration saying his rate

6

was $850 per hour, while others on the case declared their rates were $675 per hour. On a substantial evidence review, we accept all evidence in support of the order, draw all reasonable inferences to affirm it, and do not reweigh the evidence. (*Hoglund v. Sierra Nevada Memorial-Miners Hospital* (2024) 102 Cal.App.5th 56, 75.)

The lawyers' declarations were substantial evidence supporting the trial court's order. The trial court adjusted Pollock's fee request downward by $32,898.53. We presume this was to account for a reduction in hourly rates.

Trial courts certainly are not bound to accept lawyers' self-interested declarations of their own worth. Judges regularly see fee declarations more accurately described as aspirational than believable. Trial courts are free to adjust downward, to demand corroboration, or entirely to reject fee requests when lawyers' claims are implausible, poorly supported, or do not match the quality of the work the court has witnessed in the litigation. But this trial court compared these declarations with what it knew of these lawyers' performances in this case. The court exercised reasonable discretion in accepting this evidence.

This one-time finding does not set some floor for future fee requests by these or other lawyers. No one-way ratchet is at work. Supply and demand in the legal market, as in other markets, can be dynamic. Price can fluctuate here as elsewhere.

Kelso contends Pollock's lawyers billed too many hours. Missing from Kelso's briefing, however, is any mention of how many hours *his* lawyers devoted to this years-long litigation. Evidence of how much work one side did is an independent gauge of how much the other side did on the same case. Absent this comparative data, Kelso's complaint rings hollow.

Kelso faults the court for multiplying Pollock's fee request by a 1.8 multiplier. The primary purpose of a fee multiplier is to compensate the attorney for the prevailing party at a rate reflecting the risk of nonpayment in contingency cases. If a trial court is concerned a particular award is excessive, it has broad discretion to adjust the fee downward or to deny an unreasonable fee altogether. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1138; see also *Laffitte, supra*, 1 Cal.5th at p. 505.) Given that overreaching can backfire badly, fee claimants should understand that moderation is a virtue.

The choice of the appropriate multiplier can have an enormous effect on the total fee award. California law gives the trial court vast discretion in deciding whether to employ a multiplier and at what level to set it. No established criteria calibrate the precise size and direction of the multiplier, thus implying considerable deference to trial court decisionmaking about attorney fee awards. This tremendous but ill-defined quantitative potential erodes the apparent precision of the lodestar method.

A multiplier of 1.8 was, in the context of this case, within the acceptable range of trial court discretion. Kelso's attorneys presumably billed for their services every month and enjoyed regular paychecks. The situation can be different for attorneys working on a contingency who can labor for years solely in the hope that someday a crop will come in. Some years the harvest is a bounty. Other years there is nothing at all.

///

///

///

## DISPOSITION
We affirm and award costs to the respondent.


WILEY, J.

We concur:


GRIMES, Acting P. J.


VIRAMONTES, J.

9