Filed 6/3/16  Ocean's Eleven Casino v. Anders CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| OCEAN'S ELEVEN CASINO, | D067343 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2012-00055763-CU-DF-NC ) |
| TIM ANDERS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Affirmed.

The McMillan Law Firm, Scott A. McMillan and Michelle D. Volk for Defendant and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Spencer C. Skeen, Timothy L. Johnson and Jesse C. Ferrantella for Plaintiff and Respondent.

Tim Anders appeals an order awarding him attorney fees after a successful motion to strike the complaint under Code of Civil Procedure[1] section 425.16, the anti-SLAPP

---

[1]     Statutory references are to the Code of Civil Procedure unless otherwise specified.

(strategic lawsuit public participation) statute.  He claims the superior court erred by:  (1) disallowing fees of nonrecord counsel; (2) disallowing fees of record counsel for legal services ancillary to the successful anti-SLAPP motion; and (3) failing to properly calculate the lodestar of certain attorney fees.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Ocean's Eleven Casino filed a lawsuit against, among others, Anders.  In response to the complaint, Anders filed an anti-SLAPP motion.  At that time, Anders was represented by M. David Meagher.  Meagher also filed a reply in support of the motion.

The superior court denied the anti-SLAPP motion.  Shortly thereafter, Meagher filed a substitution of attorney form, and Anders began to represent himself.  Anders, proceeding in pro. per., then appealed the order denying his anti-SLAPP motion.

Prior to this court hearing oral argument on his appeal, Anders retained Scott McMillan of the McMillan Law Firm, to appear at oral argument.  During oral argument, McMillan confirmed that Anders had drafted the appellate briefs and that he was appearing to handle oral argument.

This court reversed the superior court's order and remanded the matter back "to the superior court with directions to enter an order granting Anders's special motion to strike and take further action consistent with this opinion, including but not limited to, awarding Anders his reasonable attorney fees under section 425.16, subdivision (c)(1)."  (See *Ocean's Eleven Casino v. Anders* (May 9, 2014, D063269) [nonpub. opn.], review denied July 23, 2014, S219395.)

After remand and entry of the appropriate order, Anders, still represented by McMillan, filed a motion for attorney fees. In that motion, Anders sought a total of $144,616.25 in fees and $2,692.50 in costs. The requested fees consisted of attorney fees for several attorneys, including two who never appeared on behalf of Anders. For purposes of our analysis here, we provide a brief breakdown of the requested fees.

For Meagher, who represented Anders initially and drafted the anti-SLAPP motion, Anders requested a total of $66,420. Anders calculated this amount by asking for a $600 per hour rate, multiplying it by 75.90 of billed hours, and then multiplying the product by a multiplier of .5.

Anders also sought fees for Attorney Paul Clifford. Clifford spent two hours reviewing case materials and advising Anders on his anti-SLAPP appeal. Clifford's hourly fee was $500 so Anders sought $1,000 in connection with Clifford's work.

For Attorney Herbert Papenfuss, Anders asked for a total of $7,055. He calculated that amount by multiplying Papenfuss's hourly rate of $350 by 21.30 hours billed, then subtracting $400 from the total for a payment he previously made. In his declaration, Papenfuss stated that Anders retained him to provide "legal advice with respect to defending the claim of Ocean's Eleven Casino against him." In the course of his representation of Anders, Papenfuss declared that he "had 40 phone calls with Mr. Anders discussing various aspects of the case including how to proceed, discussions of the law, settlement negotiations preparation and other matters and assisted Mr. Anders in his defense of this action." Papenfuss also reviewed and prepared pleadings on Anders's behalf.

3

In regard to the services provided by the McMillan Law Firm, Anders sought a total of $62,141.25. Four attorneys and one paralegal at the McMillan Law Firm worked on the instant matter, billing a total of 159.18 hours with the following billing rates: McMillan ($500 per hour); Charles Kagay[2] ($600 per hour); Michelle Volk ($375 per hour); Sean Smith ($275 per hour); and Olga Bresheva ($40 per hour). Anders calculated an additional $8,000 for anticipated work on the attorney fees motion. Based on the billings submitted by Anders in the record, it appears that at least 70 of the requested hours concerned tasks either unrelated or tangentially related at best to the anti-SLAPP motion or the appeal of that motion. These tasks were related to, among other things, investigating unauthorized client contact, moving to disqualify opposing counsel, preparing a peremptory challenge of the judge, and preparing for and attending a mediation.

Ocean's Eleven opposed the motion, arguing Anders was not entitled to attorney fees when he was proceeding in pro. per., fees unrelated to the anti-SLAPP motion were not recoverable, and excessive fees should not be awarded.

Prior to the hearing on the motion for attorney fees, the court issued a tentative ruling wherein the court proposed to award Anders attorney fees in the amount of $58,177.50 as well as costs of $192.50. The court also proposed to cap attorney fees at

---

2     In his motion for attorney fees, Anders included Kagay as an attorney in the McMillan Law Firm. However, Kagay's declaration indicates that he is a principal of Spiegal Liao & Kagay, P.C. He does not explain how he is connected to the McMillan Law Firm apart from assisting in that firm's representation of Anders. Anders requested a total of $1,140 based on Kagay's consultation with McMillan on appellate issues as well as Kagay's work in support of the motion for attorney fees.

an hourly rate of $325, which applied to McMillan, Kagay, Volk, Meagher, and Clifford. The court further explained that it was deducting some hours because they concerned work unrelated to the anti-SLAPP motion.

At the hearing on the motion, McMillan argued on behalf of Anders. He took issue with the court capping hourly fees at $325 and urged the court to reconsider that issue. The court acknowledged that McMillan made a "fair request" and the court agreed to "go back and take a look at . . . the hourly rate." McMillan also attempted to explain why each attorney who billed on the matter played an important role and why certain fees that may have appeared unrelated to the anti-SLAPP motion should nonetheless be recoverable in defense of the lawsuit.

During the hearing, the court indicated that it believed "an awful lot of hours [were] billed on this case." And the court "couldn't tie" all the billing records to just the anti-SLAPP motion as opposed to "the entirety of the case." It also noted that some time entries did not seem to result in new work and thus it reduced the time to remove those unproductive hours. The court also indicated that it did not believe the instant matter was too complicated, but instead presented a more "straightforward" anti-SLAPP issue than other cases it had seen. Moreover, the court observed that the anti-SLAPP motion and related pleadings were not complex, and in the court's opinion, the Court of Appeal did not think the case was complex as well. The court summarized that based on anti-SLAPP case law, its experience with anti-SLAPP motions, and the Court of Appeal's opinion reversing the order denying the anti-SLAPP motion, it "just [couldn't] support an

5

attorneys' fee award in the six figures" in this matter. The court ultimately took the

matter under submission to consider the arguments raised by counsel.

The court subsequently issued a detailed minute order awarding $60,477 in

attorney fees and $192.50 in costs. The fees consisted of $15,750 to Meagher and

$44,697 for the McMillan Law Firm. Because the court thoroughly explained its

calculation of reasonable attorney fees it awarded, we include portions of the challenged

minute order verbatim:

> "The Court deducts 12.9 hours for portions of fees billed by
> Attorney David Meagher on 8/29/12 (2 hours), 8/31/12 (3 hours) and
> 9/4/12 (2.5 hours) as not related to the anti-SLAPP motion. The
> Court reduces the hourly rate of Attorney Meagher to $250. . . . The
> Court also declines to award a multiplier to the fees charged by
> Attorney Meagher. Attorney's fees awarded and attributable to the
> work of Attorney Meagher are $15,750 (63 hours @ $250 per hour).
> [¶] The Court declines to award the fees incurred by Attorney
> Papenfuss as the Papenfuss declaration does not reflect that such
> fees were related to the anti-SLAPP motion. [¶] The Court declines
> to award the $1,000.00 fees incurred by Attorney Paul Clifford. [¶]
> The Court deducts 66.75 hours from the hours incurred by the
> McMillan law firm as not related to the anti-SLAPP motion as
> follows: 34.35 hours for the motion to disqualify, 9.65 hours in
> regard to the ex parte settlement agreement and 22.75 hours for
> preparation of the mediation brief and mediation. The hours are
> deducted from the total fee request at the rate of $275 per hour. The
> Court also deducts 1.9 hours incurred by Attorney Volk for
> preparation of the peremptory challenge. [¶] This Court has raised
> the rate of Attorney McMillan to $450 per hour. However, that
> higher rate comes with it a presumptive knowledge and experience
> which diminishes the need for research and assistance. The Court
> declines to award the $1,140.00 fees incurred by Attorney Charles
> Kagay. The Court also declines to award secretarial fees of $288.
> [¶] The total fees awarded and attributable to the McMillan firm are
> $44,697.00, after deduction of the sum of $18,356.25 (66.75 hours
> @ $275 per hour) as follows: [¶] Attorney McMillan: 100.85 hours
> (including estimated 16 hours for fee motion) @ 450 per hour [¶]

Attorney Volk: 5.1 hours @ $325 per hour [¶]  Attorney Smith: 58.23 hours @ $275 per hour"

Anders timely appealed the order.

DISCUSSION

The anti-SLAPP statute provides for an award of attorney fees and costs to the prevailing defendant on a special motion to strike.  (§ 425.16, subd. (c).)  The defendant may recover fees and costs only for the motion to strike, not the entire litigation.  (*S.B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 381; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1383.)

"A trial court may not rubber stamp a request for attorney fees," but rather "must determine the number of hours reasonably expended."  (*Donahue v. Donahue* (2010) 182 Cal.App.4th 259, 271 (*Donahue*); italics omitted.)  "The court tabulates the attorney fee touchstone, or lodestar, by multiplying the number of hours reasonably expended by the reasonable hourly rate prevailing in the community for similar work."  (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1321 (*Christian Research*).)  The trial court retains discretion to award attorney fees in an amount less than the lodestar tabulation.  (*Id*. at pp. 1321-1322.)  Indeed, as our Supreme Court has observed, "To the extent a trial court is concerned that a particular award is excessive, it has broad discretion to adjust the fee downward or deny an unreasonable fee altogether."  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1138.)  Further, trial judges are entrusted with this discretionary determination because they are in the best position to assess the value of the

7

professional services rendered in their courts. (*Id.* at p. 1132; accord, *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)

We review an anti-SLAPP attorney fee award under the deferential abuse of discretion standard.[3] (*Ketchum, supra*, 24 Cal.4th at p. 1130.) The trial court's fee determination " ' "will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Id.* at p. 1132.)

An attorney fee dispute is not exempt from generally applicable appellate principles. "The judgment of the trial court is presumed correct; all intendments and presumptions are indulged to support the judgment; conflicts in the declarations must be resolved in favor of the prevailing party, and the trial court's resolution of any factual disputes arising from the evidence is conclusive." (*In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 561-562.) We may not reweigh on appeal a trial court's assessment of an attorney's declaration (*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622-623), and it is for the trial court "to assess credibility and resolve any conflicts in the evidence. Its findings . . . are entitled to great weight. Even though contrary findings could have been made, an appellate court should defer to the factual determinations made by the trial court when the evidence is in conflict. This is true whether the trial court's ruling is based on oral testimony or declarations." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 479, italics & fn. omitted.)

---

3    Anders correctly points out that we review the failure to award attorney fees independently. (See *Moraga-Orinda Fire Protection Dist. v. Weir* (2004) 115 Cal.App.4th 477, 480.) We apply that de novo standard only when a party claims to be entitled to legal fees and the court does not award any. That is not the case here.

Here, Anders claims the court abused its discretion by: (1) failing to award fees in the amount of $1,000 to Clifford and $1,140 to Kagay; (2) disallowing certain fees for legal services "ancillary to the successful anti-SLAPP appeal"; and (3) improperly calculating the loadstar amount for Meagher's fees.[4] We reject these arguments.

As to both Clifford and Kagay, Anders offers no argument to explain how the superior court abused its discretion in not awarding either attorney fees. Instead, he reiterates both attorneys' respective qualifications and discusses what each of them has done in other cases, including other cases in which a court has awarded them fees. As to Kagay, the court was clear as to why it did not award any of his requested fees. The court awarded McMillan a hourly rate of $450 but noted "that the higher rate comes with it a presumptive knowledge and experience which diminishes the need for research and assistance." During his representation of Anders, McMillan consulted with Kagay on appellate issues. The court found this consultation unnecessary considering the higher hourly rate given to McMillan.

Although the court does not explain his denial of fees as to Clifford, it is clear from the record that Clifford, at most, provided some advice regarding the appeal, including reviewing Ander's reply brief for 18 minutes. The record implies that the court concluded Clifford's assistance on this matter did not warrant an award of fees. We note that when Clifford provided his assistance, it is undisputed that Anders was proceeding in pro. per. with his appeal. Moreover, like Kagay, Clifford's work pertained to the appeal

_____

4    Anders does not challenge the court's failure to award any fees to Papenfuss as well as the amount of costs awarded. We consider these issues waived.

9

for which McMillan ultimately was retained and the court awarded McMillan a higher rate that diminished the need for additional assistance. Although we acknowledge that, unlike Kagay, there is no indication that Clifford consulted with McMillan, we determine the court was well within its discretion to conclude that Clifford's assistance did not benefit Anders to the point that it was subject to compensation.

Anders also challenges the court's failure to award the McMillan Law Firm fees for challenging the direct communications by Ocean's Eleven's counsel with Anders (including filing an unsuccessful motion to disqualify counsel) and preparing for and participating in mediation. Citing *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi* (2006) 141 Cal.App.4th 15 (*Wanland*), Anders insists the subject tasks "arose from protecting Mr. Anders [sic] rights arising from the denial of his special motion to strike." *Wanland* does not support Anders's position here.

In *Wanland*, the defendant was awarded its attorney fees following a successful anti-SLAPP motion. The plaintiffs appealed and filed an undertaking to obtain a stay of enforcement of the attorney fees award. The court held the fees incurred by the defendants for litigating the adequacy of that undertaking was directly related to the original appeal and thus authorized by its award of costs and attorney fees on the original appeal under the anti-SLAPP statute. (*Wanland, supra*, 141 Cal.App.4th at pp. 22-23.)

In contrast to the litigation over the undertaking to stay the enforcement of an attorney fee award in *Wanland, supra,* 141 Cal.App.4th 15, here the McMillan Law Firm's motion to disqualify opposing counsel and its preparation for and participation in a mediation occurring about a month after this court issued its opinion reversing the order

10

denying the anti-SLAPP motion are tangentially related at best to the anti-SLAPP motion and the ensuing appeal. As such, we are satisfied the court did not abuse its discretion in determining the subject tasks were not sufficiently related to the anti-SLAPP motion to warrant compensation. (Cf. *S.B. Beach Properties v. Berti*, *supra*, 39 Cal.4th at p. 381; *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.*, *supra*, 39 Cal.App.4th at p. 1383.)

Finally, Anders asserts that the court improperly calculated the lodestar for Meagher's fees. To this end, he notes that the anti-SLAPP motion that Meagher drafted and argued in the superior court ultimately proved successful. Further, Anders maintains that the court did not explain its reduction of the hourly rate from $325 in the tentative ruling to $250 in the final order. Anders's contentions are without merit.

As a threshold matter, we note that there is no requirement that a superior court explain its specific reasoning in calculating reasonable attorney fees or even expressly acknowledge the lodestar amount. (*Ketchum*, *supra*, 24 Cal.4th at p. 1140; *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67.) And, " ' "[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' " (*Ketchum*, *supra*, at p. 1140.)

Also, it is apparent from the record why the superior court reduced Meagher's hourly rate. The court did not find the case particularly difficult or complex. The court explained, "But I look at the moving papers and the amount of thought and ingenuity that went into them. It was not complex, from my perspective. And, clearly, the Court of

11

Appeal didn't think it was that complex. So really the judge who ruled on it ruled differently than the Court of Appeal did. That doesn't automatically make it a more complex motion." The court further cemented its conclusion that it found Meagher's work not worthy of the $600 per hour rate Anders requested, "A $600 an hour rate for the papers that I read is not something I'm ever going to get to." The court additionally explained during the hearing that, for most of fee applications filed in North San Diego County Superior Court, the requested fees are between $200 and $300 per hour. Thus, the court was very clearly explaining its approach to determining the reasonable hourly fees at the hearing.

Although we might disagree with the superior court here as to the complexity of the anti-SLAPP motion and the issues raised, we may not substitute our judgment for that of the superior court. (See *Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1249-1250.) Further, it is abundantly clear on the record before us that the superior court carefully exercised its discretion in awarding reasonable attorney fees to Anders. The resulting order was not arbitrary, capricious, or beyond the bounds of reason. In other words, "The award was not clearly wrong; the superior court did not abuse its discretion." (*PLCM Group, Inc. v. Drexler*, *supra*, 22 Cal.4th at p. 1096.)

DISPOSITION

The order is affirmed. Ocean's Eleven is awarded its costs on appeal.

12

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

O'ROURKE, J.