Filed 12/14/23  Amorastreya v. Torres CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ADAM AMORASTREYA et al., Plaintiffs and Appellants, v. LUIS TORRES et. al., Defendants and Respondents. | A162595 (Alameda County Super. Ct. No. RG16833583) |

When plaintiffs' tenancy ended, their landlords refused to return the $5,000 security deposit.  Eschewing the expeditious, inexpensive—and tenant-friendly—procedure set forth in Civil Code section 1950.5, plaintiffs filed a complaint that sought the security deposit, a statutory penalty, damages for their efforts to obtain the deposit, damages for emotional distress, and over $1,200,000 in punitive damages.  Defendants filed a cross-complaint for claimed damage to the property.  Following a 10-day court trial, the court issued a comprehensive decision awarding plaintiffs less than $30,000—$16,468 to one plaintiff, $13,218 to the other.  Following a later hearing, the court denied plaintiffs' claim for punitive damages.  Judgment was entered, and neither side filed an appeal.

Plaintiffs thereafter moved for attorney fees, seeking $312,229. Following defendants' opposition, the motion came on for hearing as ordered by the trial court, which then entered a thoughtful order awarding plaintiffs $10,762.50 in attorney fees for their defense against the cross-complaint—and no fees for pursuit of the complaint. We affirm.

## BACKGROUND

### The General Setting

Defendants Carina Campo and Luis Torres (when referred to collectively, defendants) owned a house at 55 Wildwood Lane, Novato (the house). The relationship pertinent here began in 2009, when, as the trial court would later put it, "plaintiff Kathryn Amorastreya moved into defendants' house . . . with a roommate (Tracy) and together they tendered a $5,000 security deposit to defendants." At some point Tracy moved out of the house, and Kathryn reimbursed her $2,500 portion of the security deposit. Then, in 2011, Adam Amorastreya moved into the house and paid Kathryn his portion of the security deposit.

On April 12, 2015, a lease was executed between Carina Campo and Luis Torres as "landlord" and Kathryn Amorastreya as "tenant." The lease provided that the premises would be for the sole use of three people: "Kathryn Amorastreya, Adam Amorastreya, and Taymar Edwards."[1] Despite that Kathryn is the only tenant, the lease is signed by Kathryn Amorastreya and Adam Amorastreya, and various pages calling for "tenant's initials" contain "KA" and "AA."

In mid-September 2015, Kathryn and Adam Amorastreya vacated the house, and requested return of the security deposit. Defendants refused, and

---

[1] Edwards moved out of the house in the summer of 2015, and is not involved in this lawsuit.

2

served a "good faith estimate" claiming that $46,154 in damages was done to the house.

This lawsuit followed.

**The Proceedings Below**

On June 9, 2017, plaintiffs Kathryn Amorastreya and Adam Amorastreya (when referred to collectively, plaintiffs) filed a first amended complaint, the operative complaint here (complaint).[2] The complaint was a form pleading, and alleged two causes of action, both "intentional torts," described as "California Civil Code section 1950.5(l); conversion." The complaint sought "general damage" and "other damage," described as follows: "Deprivation of $5,000.00 residential security deposit. Statutory damages of $10,000.00 for bad faith retention and conversion of security deposit pursuant to California Civil Code § 1950.5(l). Reasonable attorney fees, legal expenses, and costs according to proof." And the complaint prayed for compensatory damages and punitive damages "in the amount of $1,265,000.00."[3]

On July 25, 2017, defendants filed an answer and also a cross-complaint that sought $41,455 for claimed damage to the house.

In August 2017, the case was assigned for all purposes to the Honorable Paul Herbert, a most experienced trial judge. Several case management conferences were held, and in May 2018, the matter was set for jury trial for December 3, 2018 and later reset for January 2, 2019. Then, on October 26, a withdrawal of demand for a jury trial was filed.

---

[2] According to the register of actions, the original complaint was filed on October 3, 2016. Defendants filed a motion to strike and a demurrer, both of which were scheduled to be heard in mid-May 2017, which hearings were rescheduled and then dropped on June 20.

[3] Setting forth an amount was in direct violation of Civil Code section 3295, subdivision (e), which states that "[n]o claim for exemplary damages shall state an amount or amounts."

In late December, both sides filed trial briefs. Plaintiffs' brief set forth their claim for the damages allegedly suffered by the conversion: (1) the security deposit due them, plus interest; (2) compensation for the time and money spent in attempting to recover their security deposit; and (3) emotional distress they suffered as a result of defendants' conduct. They also sought punitive damages.

Defendants filed a trial brief that gave the reasons in claimed support of the $41,455 sought in the cross-complaint: "In 2015 the landlords fell on hard financial times and decided that they needed to sell the property. They gave the Amorastreyas notice of their intent to sell and worked with them for a smooth transition out of the property. The Amorastreyas moved out September 14, 2015. Torres/Campo thereafter timely advised [the] Amorastreyas in writing that they were not returning any portion of the security deposit. This notice, their good faith estimate, complied with the requirements of Civil Code [section] 1941, outlining the damage to the premises that was beyond normal wear and tear. [¶] . . .[¶] Although the damages were large, Torres/Campo decided not to pursue the Amorastreyas for the cost of damage to the property as they had moved out of state. After [the] Amorastreyas sued them for non-return of the security deposit, they decided to answer and cross-complain for the property damages caused by the Amorastreyas. . . ."

A court trial began before Judge Herbert on January 3, 2019, and involved 10 court days spread over the next few months, with final arguments on July 24.[4] Neither side requested a statement of decision.

_____

[4] As to the length of trial, and how it could have consumed 10 trial days, this is not apparent from the record, especially as on January 4, the second day of trial, Judge Herbert stated he understood the case would take three court days and would end "tomorrow."

4

On October 17, Judge Herbert filed his "decision following court trial," a comprehensive decision indeed. After setting forth the history of the pleadings, he set forth the applicable law, and then the facts leading to his findings. He then concluded that $1,199 of the deductions claimed by defendants in their cross-complaint were supported and that the remaining items sought to be deducted from the security deposit were not.

Finally, Judge Herbert's decision ended with his ruling on plaintiffs' complaint, which was this:

"18. On plaintiffs' separate claim of conversion, the Court finds that plaintiffs have met their burden to establish each of the elements of this claim (CACI [No.] 2100.) Plaintiffs established that they had a right to the $3,801.00 portion of the security deposit wrongfully withheld from plaintiffs; that defendants substantially interfered with plaintiffs' property by knowingly and intentionally refusing to return said amount; that plaintiffs did not consent to the retention of said amount; that plaintiffs were harmed; and that defendants' conduct was a substantial factor in causing plaintiffs' harm.

"19. The Court finds plaintiffs established the following items of damage on their conversion claim:

- Amount of Security Deposit wrongfully withheld: $3,801.00

- 10% Prejudgment interest on said amount (1.04/day): $1,534.96

- Reasonable Compensation for time and money spent by plaintiff Kathryn in attempting to recover plaintiffs' property ($50/hour x 35 hours): $1,750.00

"• Reasonable Compensation for time and money spent by plaintiff Adam in attempting to recover plaintiffs' property ($50/hour x 100 hours):  $5,000.00

"• Plaintiffs' combined reasonable travel expenses:  $4,000.00

"• Emotional Distress suffered by Kathryn:  $3,000.00

"• Emotional Distress suffered by Adam:  $3,000.00

"20.  Plaintiffs are not entitled to seek attorney's fees on their affirmative claims pursuant to Civil Code section 1950.5 or for conversion. (See Civil Code, § 1950.5; CACI [No.] 2102; *Haines v. Parra* (1987) 193 Cal.App.3d 1553, 1559.)

"21.  The Court finds that defendants have failed to carry their burden of proof to establish their cross-claim for breach of the 2015 lease agreement. [Citation.]  Defendants have failed to show by a preponderance of the evidence that plaintiffs breached any material obligation under the 2015 lease.  The Court finds that plaintiff[s] are the prevailing party on defendants' cross-claim for breach of contract, and are therefore entitled to seek, by subsequent motion, their reasonable attorney's fees incurred solely in defending against the cross-claim.

"22.  By separate order, the Court will schedule a further Case Management Conference to set a one-day trial on all further issues related to any further punitive damages being sought by plaintiffs.

"IT IS SO ORDERED."

On August 25, 2020, following a court trial, Judge Herbert filed his decision denying plaintiffs' claim for punitive damages.

On November 12, Judge Herbert filed judgment after court trial, awarding $16,468.98 to Adam Amorastreya and $13,218.98 to Kathryn Amorastreya, and awarding defendants nothing on their cross-complaint.

6

Neither side appealed from that judgment. And neither side asserts that any part of the decision is not supported by substantial evidence. In short, the parties are satisfied with the amount of the damages awarded, as well as the basis of those damages.

The appeal arises out of what happened next—plaintiffs' motion for attorney fees.

**The Motion for Attorney Fees**

On April 2, 2021, plaintiffs filed an amended motion for attorney fees.[5] The motion was made pursuant to "[California Code of Civil Procedure,] §§ 1033.5(a)(10)(A) & (c)(5), and Rule 3.1702 of the California Rules of Court," and stated it was based on "paragraph 40 of the parties' April 2015 lease agreement." Paragraph 40 of the lease agreement provides: "ATTORNEY FEES: In any action or proceeding arising out of this Agreement, the prevailing party between Landlord and Tenant shall be entitled to reasonable attorney fees and costs, except as provided in paragraph 39A." And the referenced paragraph 39A provides: "Consistent with paragraphs B and C below, Landlord and Tenant agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action."

---

[5] There is no original motion for attorney fees in the record, and the register of actions does not refer to one.

7

The motion was accompanied by a declaration of Stephen Kent Rose, plaintiffs' attorney, and sought attorney fees in the amount of $312,229.13 for a claimed 430.75 hours of attorney time at an "adjusted Laffey Matrix" hourly rate of $724.85. The motion represented that Mr. Rose "[t]abulated 430.75 hours for his attorney time reasonably spent litigating this case. These times and activities are detailed in a table of Plaintiffs' Attorney's Time and Activities attached as Exhibit 5 to the Declaration of Stephen Kent Rose in Support of Motion for Attorney Fees served and filed herewith. [¶] Plaintiffs' counsel has exercised generous 'billing discretion' by declining to charge Defendants for several dozen hours of his pretrial telephone, text, and email communications with Plaintiffs, their witnesses, Defendants' attorney Patricia Turnage, this Court's staff, and many others in the course of prosecuting this case. Plaintiffs['] counsel has also omitted charges for 70 hours spent listening to audio recordings of the trial of this case necessitated by the lengthy delays between trial proceedings, and for the many hours expended during March 2021 tabulating his time spent on this case and drafting this Motion for Attorney Fees."

Defendants filed opposition to the motion, which opposition included a memorandum of points and authorities and a declaration of Patricia Turnage, their attorney. Defendants' opposition asserted among other things that the fees claimed were excessive, that the hourly rate claimed was high, and, in a separate argument, that plaintiffs did not make efforts to mediate and therefore "are not entitled to attorney's fees under the lease."

Ms. Turnage's declaration testified among other things that:

"6. I have practiced landlord-tenant law for more than 15 years. I am familiar with the general practice of landlord-tenant attorneys advising tenants to resolve their non-return of security deposit in small claims court.

8

"7. Throughout this litigation, there have been discussions with Plaintiffs' counsel to resolve the matter but his insistence on paying a huge amount of attorney's fees in settlement has always been asserted and has been a hurdle to settlement."

Plaintiffs filed a reply memorandum and another declaration of Mr. Rose. Responding to some of Ms. Turnage's criticisms of excessive time, particularly her criticism of the time claimed for trial preparation, Mr. Rose's declaration said this: "During trial preparation in November 2018, this case was scheduled for a jury trial so all of the requirements of this Court's Local Rule 3.35 for jury trial including preparation of jury instructions and careful culling and organization of video, photographic, and documentary exhibits needed to be implemented. I was already familiar with Rule 3.35."

As noted, the register of actions shows that the demand for jury trial was withdrawn on October 26.

The motion was set for hearing for April 28, 2021, prior to which Judge Herbert had published a tentative ruling that among other things requested that counsel appear. The hearing occurred, and that same day Judge Herbert filed his order on the motion for attorney fees, that "Plaintiffs' motion for attorney fees incurred in defending against the cross-complaint filed by defendants is granted, in part," and went on to thoroughly explain why:

". . . The Court has previously determined that plaintiffs were the prevailing parties on the cross-complaint filed on behalf of defendants, which alleged breach of the rental contract. Hence, plaintiffs are entitled to recover their reasonable attorney fees incurred in successfully defending against the cross-complaint. The Court has also previously determined that plaintiffs are not entitled to seek recovery of their attorney fees incurred in pursuing their

9

affirmative claims for conversion and for the wrongful retention of their security deposit under Civil Code section 1950.5.  Indeed, in section 1950.5, et seq., our legislature carefully crafted a comprehensive statutory remedy for the wrongful retention of any rental security deposit, with clear legal standards that shift the burden of proof to landlords to justify retention of any portion of a security deposit, thereby enabling tenants to effectively seek redress in small claims court, without the need to hire and pay counsel on their behalf."

Judge Herbert then set forth the governing law:  "Having determined that plaintiffs are entitled to reasonable attorney's fees incurred in defending against the cross-complaint, the court must determine the amount of such reasonable fees.  The trial court has broad authority to determine the amount of a reasonable fee.  (*PLCM Group v. Drexler* (2000) 22 Cal.4th 1084, 1094–1095 [(*PLCM*)].)  The fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. (*Id.* at p. 1095.)  The lodestar figure may then be adjusted, based on the circumstances.  (*I*[*bi*]*d.*)  The value of legal services performed in a case is a matter in which the trial court has its own expertise and the court may make its own determination contrary to, or without the necessity for, expert testimony. (*Id.* at p. 1096.)  This court has presided over scores of landlord-tenant and small claims cases in which breach of the rental agreement and the alleged wrongful retention of a security deposit were among the issues in dispute.  These cases are not complex and the pertinent legal standards that govern these disputes are well settled and are straight forward.  (See e.g., Civil Code section 1950.5, et seq.)

"The court is to make its fee determination after considering a number of factors, including the nature of the litigation, its difficulty, the amount

involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case. [(*PLCM*, *supra*, 22 Cal.4th at p. 1096.)] Although the fee provision at issue does not expressly refer to the 'lodestar' or other method of calculating fees, it authorizes this Court to award reasonable attorneys' fees, which are determined under well-established authority including *PLCM* . . . among others.

"This case has been assigned for all purposes to the undersigned judge since August 17, 2017, and the court is thoroughly familiar with the nature of the case, the skill required for its handling, the lack of complexity of the disputed legal issues, and the decisions and strategies employed. The court has observed the level of skill and professionalism employed by plaintiffs' counsel and has taken this into account, along with the other applicable factors in reaching an appropriate determination as to the reasonable value of the services provided by plaintiffs' counsel in defense of the cross-complaint. (See *PLCM*, *supra*, 22 Cal.4th at p. 1096.)

"Here, Plaintiffs seek to recover $312,229.13 in attorney's fees and costs incurred for this case, which shocks the conscience of this Court for an action that could have, and should have, more appropriately been initiated in small claims court. Notably, in their papers supporting this motion, plaintiffs make no earnest attempt to differentiate between time spent in defense of the cross-complaint, as distinguished from time spent in support of their affirmative claims for wrongful retention of the security deposit in violation of Civil Code section 1950.5 and for conversion. Instead, they seek everything. Furthermore, having presided over the court trial of this matter, the Court understands that very little time needed to be devoted to defending against the cross-complaint, which was ill conceived from the outset and was

11

easily defeated.  Defendants presented their evidence in support of the cross-complaint in less than one full day, on the final day of the court trial, May 03, 2019.

"Nevertheless, based on all the pertinent factors to be considered, and the evidence presented, the court determines that plaintiffs have sufficiently demonstrated that a fee award in the amount of $10,762.50 constitutes appropriate compensation for the reasonable services provided in defense of the cross-complaint in this litigation.  The Court further finds that an hourly rate of $350 per hour is reasonable under all the circumstances presented here.  The amount being awarded includes the amount for reasonable services rendered in defense of the cross-complaint, as well as amounts for preparing the present motion as well as attending the hearing.

"Plaintiffs are awarded $10,762.50 in attorney's fees with their successful defense of defendants" cross-complaint.  In all other respects, Plaintiffs' motion is denied."

Plaintiffs filed their appeal from that order.

## DISCUSSION

### Introduction

Judge Herbert ruled as he did in light of his years of experience that included "scores of landlord-tenant and small claims cases" involving the issue of a security deposit, not to mention his involvement in this particular case for almost four years.  And, as he aptly noted, the case was not complex, but rather involved "well-settled and straightforward" law, with all of which he was "thoroughly familiar."  As he put it at the hearing on the attorney fee motion, "This is not complex in the least, . . . and I have personally presided over, I don't know, 200, 300 cases where tenants adequately represented themselves in these cases and got back their entire security deposit plus the

12

penalty wages, the penalty fees, provided under 1950.5 et cetera.  So these are not complex claims in this Court's opinion.  [¶] . . .  The legislature has done a very good job of laying out the statutory scheme that would permit people to bring these cases on their own without the benefit of counsel and they do so successfully every day."

And Judge Herbert added these comments to Mr. Rose:  "I understand your position.  But you're not entitled—you know if the legislature had intended for parties to be able to seek attorney's fees claims for affirmative claims under Civil Code Section 1950.5, the legislature would have included such a provision in that statute.  The legislature certainly understands how to do that and they do that where they think it's appropriate.  [¶]  So, for example, the Consumer Legal Remedies Act allows for recovery of attorney's fees.  All the various Labor Code provisions for various types of employment claims include claims for attorney's fees.  [¶]  And in this instance, I think the legislature quite wisely did not include an attorney fee provision in Civil Code Section 1950.5 so that we could avoid situations where, like this one, where, frankly, the case was probably over lawyered, I would say, is a kind way to put it."

Judge Herbert gave several reasons for his ruling, most fundamentally the fact that an alternative was available to plaintiffs, an alternative that would have been quick, inexpensive, and successful.  He also noted that the case was "over-lawyered" and that plaintiffs' fee request "shocks the conscience."  We agree on all counts.

Not only are Judge Herbert's observations fully supported, his decision reflects our Supreme Court's observation that any decision to award attorney fees involves equitable considerations.  (*International Industries, Inc. v. Olen* (1978) 21 Cal.3d 218, 222–224 (*Olen*); *Ecco-Phoenix Elec. Corp. v. Howard J.*

13

*White* (1969) 1 Cal.3d 266, 272.) Indeed, *Olen*—there discussing Civil Code section 1717, which has language identical to the lease here, that the prevailing party "shall" recover fees—went so far as to say that "Enactment of section 1717 commands that equitable considerations must rise over formal ones. Building a reciprocal right to attorney fees into contracts, and prohibiting its waiver, the section reflects legislative intent that equitable considerations must prevail over both the bargaining power of the parties and the technical rules of contractual construction." (*Olen*, *supra*, 21 Cal.3d at p. 224.)

That, then, is the background against which we review Judge Herbert's decision, a review we make in light of the most fundamental rule of appellate review that his ruling is presumed correct. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

**The Standard of Review**

Plaintiffs assert that Judge Herbert's order "should be reviewed de novo," citing to *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744 (*Mountain Air*), and *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169 (*Connerly*). In *Mountain Air*, a 4-3 opinion, our Supreme Court said this: " ' "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' (*Connerly*[, *supra*,] 37 Cal.4th [at p.] 1175, quoting *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.) In other words, 'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an

14

attorney fee award is a question of law to be reviewed de novo.' [Citation.] In this case, where the material facts are largely not in dispute, our review is de novo." (*Mountain Air*, *supra*, 3 Cal.5th at p. 751.) In the words of *Connerly*, "if the material facts are largely undisputed, [it presents] a question of law." (*Connerly*, at pp. 1175–1176.)

### Plaintiffs Have Not Demonstrated Error

We question whether de novo review applies, as Judge Herbert did not decide the "legal basis" for an award. Perhaps more importantly, the facts are not "largely undisputed." And if that is not the standard of review, it is abuse of discretion, a showing plaintiffs do not even attempt here.

But whatever the standard of review, we would affirm.

The case was "overlawyered," Judge Herbert expressed to Mr. Rose, a comment plaintiffs do not dispute. And, he said, the fee request "shocks the conscience," another observation ignored by plaintiffs. Judge Herbert's observations were spot on. And hardly an abuse of discretion: not "so irrational or arbitrary that no reasonable person could agree with it." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773; *In re White* (2020) 9 Cal.5th 455, 470 ["arbitrary or irrational"].)

That the case was "overlawyered" is supported by the fact that plaintiffs' recovery was de minimis. As revealed by plaintiffs' complaint and their closing argument, plaintiffs sought over $1,300,000 in damages. This included their claimed compensatory damages, the $5,000 security deposit "trebled," the time allegedly spent by plaintiffs' in seeking return of the security deposit, and damages for their claimed emotional distress, all in addition to the punitive damages prayed for in the complaint. They

15

recovered less than $30,000, $16,468 to Adam and $13,218 to Kathryn, barely over two percent of their claim.

*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970 is instructive. Chavez was an action under FEHA, and plaintiff recovered damages of $11,500, less than half of the damages available in a limited jurisdiction case, and sought $870,935 in attorney fees. The trial court denied the fees, relying on Code of Civil Procedure section 1033, subdivision (a), whose language and effect the Supreme Court described this way: "[Code of Civil Procedure] [s]ection 1033(a) provides: 'Costs or any portion of claimed costs shall be as determined by the court in its discretion in a case other than a limited civil case in accordance with Section 1034 where the prevailing party recovers a judgment that could have been rendered in a limited civil case.' In other words, [Code of Civil Procedure] section 1033(a) applies when a plaintiff has obtained a judgment for money damages in an amount (now $25,000 or less) that could have been recovered in a limited civil case, but the plaintiff did not bring the action as a limited civil case and thus did not take advantage of the cost-and time-saving advantages of limited civil case procedures. In this situation, even though a plaintiff who obtains a money judgment would otherwise be entitled to recover litigation costs as a matter of right, [Code of Civil Procedure] section 1033(a) gives the trial court discretion to deny, in whole or in part, the plaintiff's recovery of litigation costs." (*Chavez*, *supra*, 47 Cal.4th at pp. 982–983.)

The Court of Appeal reversed, and ordered fees. The Supreme Court reversed the Court of Appeal, holding as follows: "We have determined that the Court of Appeal erred in so concluding and that its judgment should therefore be reversed. As we explain, section 1033(a), interpreted according to its plain meaning, gives a trial court discretion to deny attorney fees to a

16

plaintiff who prevails on a FEHA claim but recovers an amount that could have been recovered in a limited civil case. In exercising that discretion, however, the trial court must give due consideration to the policies and objectives of the FEHA in general and of its attorney fee provision in particular. Here, we further conclude that, in light of plaintiff's minimal success and grossly inflated attorney fee request, the trial court did not abuse its discretion in denying attorney fees." (*Chavez*, *supra*, 47 Cal.4th at p. 976.)

While Code of Civil Procedure section 1033 is not implicated here, similar reasoning applies, fully supporting Judge Herbert's decision not to award attorney fees on the complaint.[6]

Further supporting the denial of fees here is that from all indications plaintiffs did here what the defendants opposing Chavez said he did there: " 'overreached and outrageously inflated [their] fee request.' " (*Chavez*, *supra*, 47 Cal.4th at p. 981.) This is a "special circumstance" permitting a denial of fees. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 635.)

As quoted, Judge Herbert described the fee request as one that "shocks the conscience," adding no elaboration. We will elaborate, beginning with the fact that defendants' opposition to the fee motion contended that the hours claimed by Mr. Rose were "excessive," and cited to several claimed examples, including the fees claimed for trial preparation, which preparation began on November 6, 2018—this, for a trial that was to begin in January 2019. And, as Mr. Rose admitted in his responsive declaration, the preparation was for a

---

[6] The law is that we may affirm a decision correct on any theory regardless of the considerations which may have moved the trial court to its conclusion. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18–19; *Conservatorship of McQueen* (2014) 59 Cal.4th 602, 613; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶ 8:214.)

jury trial, despite that the withdrawal of the jury request had been filed on October 26. Bad enough. But as claimed by Mr. Rose, that trial preparation was at least 82 hours, not including research for his trial brief. 82 hours—over two normal work weeks—to prepare for a simple, straightforward case, one with fundamentally four witnesses, and scheduled to take at most three days. (See fn. 4, *ante*.)

But that is just the beginning. After the trial began, Mr. Rose claimed numerous additional hours for "preparation," preparation time claimed to be spent after the hours actually spent at the trial itself. Thus, for example, following day 1 of trial, Mr. Rose "prepared" for an additional three and one-half hours, apparently to prepare for day 2. After trial on day 2, he prepared for an additional six hours; after day 3, 14 hours; after day 4, five hours.

Then, with trial to resume in late April, Mr. Rose claimed 10 hours of preparation before the recommencement. And after it resumed, he claimed "trial prep" of five hours after day 6; five hours after day 7; five hours after day 8; and five hours after day 9.

Finally, with the closing arguments to occur on July 24, Mr. Rose logged 22 hours of "closing prep"—10 hours for "review pleadings, exhibits outline" and 12 hours to "review exhibits, revise outline."

Again, *Chavez* is apt, where the Supreme Court said this: "Whether plaintiff was entitled to an award of attorney fees for time spent litigating the single successful claim requires consideration of another established principle governing attorney fee awards: 'A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether.' (*Serrano v. Unruh*[, *supra*,] 32 Cal.3d [at p.] 635; accord *Ketchum v. Moses* (2001) 24 Cal.4th 1224, 1137.)" (*Chavez,*

18

*supra*, 47 Cal.4th at p. 990.) Plaintiffs' request here "appears unreasonably inflated."

We end this discussion with a comment about the fees here. As noted, in defendants' opposition to the fee motion, their attorney Turnage testified that throughout the litigation, "there have been discussions with Plaintiffs' counsel to resolve the matter but his insistence on paying a huge amount of attorney's fees in settlement has always been asserted and has been a hurdle to settlement." Mr. Rose's reply declaration did not take issue with the criticism, responding only with his testimony quoted above.

Almost 50 years ago our Supreme Court admonished that "The purpose of litigation is to resolve participants' disputes, not compensate participating attorneys. Our courts are sufficiently burdened without combat kept alive solely for attorney fees." (*Olen, supra*, 21 Cal.3d at p. 224.) We have reiterated the admonition on occasion, most recently in *Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 642–643, as it remains apt today. Such combat is not to be condoned.

Never coming to grips with what Judge Herbert did rule, plaintiffs' argument on appeal is that the attorney fee provision was broad and that they prevailed on their claim. But even if plaintiffs' contract-based argument had some superficial appeal, the complete answer is found in *Olen* where, addressing the contract provision in Civil Code section 1717, held: "Enactment of section 1717 commands that equitable considerations must rise over formal ones. Building a reciprocal right to attorney fees into contracts, and prohibiting its waiver, the section reflects legislative intent that equitable considerations must prevail over both the bargaining power of the parties and the technical rules of contractual construction." (*Olen, supra*, 21 Cal.3d at p. 224.)

19

## DISPOSITION

The order is affirmed. Luis Torres and Carina Campo shall recover their costs on appeal.

_____
Richman, Acting P.J.

We concur:


_____
Miller, J.


_____
Markman, J. *


*Amorastreya v. Torres* (A162595)


     \*Superior Court of Alameda County, Judge Michael Markman, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.