Filed 3/26/26  Naeini v. Leuchter CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| AVA NAEINI,<br><br>        Petitioner and Appellant,<br><br>    v.<br><br>MICHAEL LEUCHTER,<br><br>        Respondent. | B341481<br><br>(Los Angeles County<br>Super. Ct. No.<br>24STRO02473) |

        APPEAL from an order of the Superior Court of Los Angeles County, Melanie Ochoa, Judge.  Affirmed.

        Ava Naeini, in pro. per., for Petitioner and Appellant;

        Michael Leuchter, in pro. per., for Respondent.

_____

        Ava Naeini appeals from an order awarding her neighbor, Michael Leuchter, $6,000 in attorneys' fees under Code of Civil

Procedure section 527.6[1] as the prevailing party with respect to Naeini's request for a civil harassment restraining order (CHRO) against him.  Naeini contends the trial court was biased and hostile toward her, refused to consider the evidence she presented, and unfairly awarded attorneys' fees to Leuchter.  Naeini did not appeal from the court's order denying her request for a CHRO, which is now final.  Naeini's contentions with respect to the order granting attorneys' fees lack merit.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *Naeini's Request for a Civil Harassment Restraining Order*

On April 9, 2024 Naeini, representing herself, filed a request for a CHRO against Leuchter, who lived directly above her condominium unit.  Naeini asserted that Leuchter had refused to repair leaks in the patio of his unit, causing water damage to her unit.  Toxic black mold grew in her unit, and the unit became uninhabitable.  Naeini also claimed Leuchter interfered with her ability to remediate the damage.

On May 15, 2024 Leuchter filed a response (submitted by his attorney, Louis Shapiro), in which Leuchter stated his wife was the owner of the condominium building in which he and his wife lived above Naeini's unit.  In 2022 Naeini informed Leuchter's wife that there was a leak in Naeini's unit.  Although an initial inspection did not find a leak, an inspection in April 2023 found a leak affecting Naeini's bedroom, which was

---

[1]      Further statutory references are to the Code of Civil Procedure.

caused by a pipe in the building, not Leuchter's unit.  In response, the homeowners' association (HOA) was in the process of repairing the leak.  Leuchter added that Naeini was incessantly contacting him and his wife over the leak and accusing them of trying to kill her by causing mold to form in her unit.  In April 2024 counsel for the HOA sent Naeini a "cease and desist" order to stop threatening and harassing the HOA's representatives.  Leuchter requested the trial court order Naeini to pay his attorneys' fees in the amount of $6,000.  Leuchter submitted, among other documents, letters showing he was a psychiatry resident at the University of California, Los Angeles and a copy of the HOA's notice to cease and desist mailed to Naeini.

On May 21, 2024 the trial court held a hearing on Naeini's request.  Naeini represented herself; Leuchter was represented by Shapiro.  Naeini stated that Leuchter had harassed her by interfering with her efforts to repair the leak in her unit.  The court asked her to explain what Leuchter had done to interfere.  Naeini responded that as of March 7, 2025 she had become sick from the mold in her unit, and she went outside to get some fresh air.  Leuchter started walking toward her, and he was laughing at her and making a "mockery" of her situation.  On other occasions he talked to the repair people and inspectors working to repair the damage to her unit and interfered with their work.  Further, he failed to take responsibility for the situation.

At the conclusion of the hearing, the trial court denied Naeini's request, finding she had not met her burden to show by clear and convincing evidence that unlawful harassment had occurred. Shapiro inquired about his request for attorneys' fees, and the court responded that attorneys' fees would be addressed at a future hearing.

B.      *Leuchter's Request for Attorneys' Fees*

On May 31, 2024 Leuchter served Naeini with notice of a July 8 hearing on his request for $6,000 in attorneys' fees. Leuchter submitted an income and expense declaration showing he had average monthly earnings of about $8,000 per month and outstanding student loans on which he owed approximately $265,000 and made monthly payments of about $1,500 per month. Shapiro submitted a supporting declaration stating he had charged Leuchter a "discounted rate of $6,000 as a flat fee for case representation." Shapiro "had to respond to [Naeini's request], prepare witnesses to testify, prepare client to testify, prepare written responses to [the request], and finally prepare this brief, to try and get Mr. Leuchter his attorney fees reimbursed." Between April 9 and May 21, 2024, Shapiro had been "available, all five days per week, at all hours of the day, to address Mr. Leuchter['s] concerns." Shapiro added, "This case should not have been filed and it would [be] unfair for Mr. Leuchter to be out of pocket for it."

Shapiro stated as to his background and fees incurred: "I have been exclusively practicing criminal law and restraining order proceedings since 2005. I am a former LA County Public Defender, and certified criminal law specialist. My billing rate is generally $650.00 per hour. At $650.00 per hour, I have spent

4

well over 13 hours on this matter.  The trial alone didn't conclude until around 2:30 p.m."  Leuchter stated in his declaration that he had paid Shapiro $6,000.  Shapiro stated in a second declaration that Naeini's allegations "were ultimately unfounded," and further, any issues Naeini had with Leuchter "should have been handled through the HOA process, which is what [Naeini] was already utilizing."[2]

At a hearing on July 8, 2024, Naeini was present in person; Leuchter appeared with Shapiro by videoconference.  At the outset of the hearing, the trial court[3] inquired about Naeini's income and expense declaration, noting the court could not order attorneys' fees if the fees would "impose[] an unreasonable financial burden on her."[4]  The court asked Naeini how she paid for her living expenses, and Naeini responded that she was behind on her mortgage, and her home (the condominium unit)

---

[2]     In his declaration Shapiro requested the trial court award attorneys' fees to Leuchter as the prevailing party under Family Code section 6344, which "provides authority for courts to award attorney's fees to prevailing parties in actions brought pursuant to the Domestic Violence Prevention Act."  (*Dragones v. Calkins* (2024) 98 Cal.App.5th 1075, 1079.)  It is not clear why Shapiro filed the notice of hearing and supporting documents on family law forms or why he cited Family Code section 6344.  In any event, as we will discuss, we review the trial court's order under the standard for an award of attorneys' fees and costs under the statute governing the issuance of a CHRO (Code Civ. Proc., § 527.6, subd. (s)), as did the superior court.

[3]     A temporary judge presided over the July 8, 2024 hearing.

[4]     The case docket reflects that on June 13, 2024 Naeini filed an income and expense declaration; the declaration is not in the record on appeal.

5

was in foreclosure.  However, she stated her home was valued between $650,000 and $690,000, and she owed $316,000 in loan payments.  After Naeini answered additional questions about her income and expenses, the court ordered her to file a revised income and expense declaration, and the court continued the hearing on attorneys' fees to September 4, 2024.

On July 29, 2024 Naeini filed an income and expense declaration stating her average monthly income was $900, she received $281 per month in public assistance, and her home was valued at $655,000.  She listed her monthly expenses and the balance she owed on her debts.

At the hearing on September 4, 2024 the parties appeared by videoconference.  Naeini represented herself, and Leuchter was represented by Shapiro.  The trial court clarified at the outset of the hearing that section 527.6 provided that a prevailing party in a CHRO proceeding may recover attorneys' fees, which the court had discretion to award.  Naeini argued the court should not award attorneys' fees because she had a fee waiver and could not afford to pay the fees.  The court inquired how she could have an income of only $900 per month but pay monthly expenses of $4,500, including her home loan payments (as reported on her income and expense declaration).  She responded, "I'm behind on my payments," but she added that she was able to pay for her basic needs with the help of her family.  The court then asked why she should not be required to pay Leuchter's attorneys' fees, to which she responded, "I believe justice is not served here," referring to the court's denial of her request for a restraining order.

Shapiro argued that Naeini should pay Leuchter's attorneys' fees because he was a part-time student (as a psychiatry resident) and was making $80,000 a year before taxes with $200,000 in student debt. Leuchter had no connection to Naeini (because Leuchter's wife owned the condominium unit), but as a result of Naeini's request for a CHRO, Leuchter had to defend the case to avoid losing his medical license. Shapiro discounted his rate to assist Leuchter and did not charge for the prior and current hearing. Further, Naeini owned the condominium unit in which she lived and had equity in it, so she could get a loan against her property to pay Leuchter's fees.

The trial court granted the motion for attorneys' fees, explaining, "So given that Mr. Leuchter was the prevailing party, and I agree with counsel that . . . this was not an issue that should have been brought as . . . a restraining order, and that . . . I think there were HOA processes that they attempted to use to resolve this issue to avoid litigation. I think that it is reasonable to allow Mr. Leuchter to recover his fees that were incurred.· Given Ms. Naeini's representations that she has limited income, I would require that it would be set over an extended period of time . . . at the requested amount of 6,000, which I find to be reasonable, at $200 a month." The court's order required payments of $200 per month to start on October 1, 2024, continuing on the first day of each month until fully paid.

Naeini timely appealed.

## DISCUSSION

A.    *Governing Law and Standard of Review*

Under section 527.6, subdivision (a)(1), "[a] person who has suffered harassment . . . may seek a temporary restraining order

and an order after hearing prohibiting harassment as provided in this section."  Harassment is defined as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose."  (§ 527.6, subd. (b)(3).)  Section 527.6, subdivision (s), provides that "[t]he prevailing party in an action brought pursuant to this section may be awarded court costs and attorney's fees, if any."

A postjudgment order awarding or denying attorneys' fees is separately appealable.  (*LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1081; see § 904.1, subd. (a)(2) [authorizing appeal of "order made after [appealable] judgment"].)  The decision whether to award attorneys' fees under section 527.6, subdivision (s), "is a matter committed to the discretion of the trial court."  (*Krug v. Maschmeier* (2009) 172 Cal.App.4th 796, 802; accord, *Wash v. Banda-Wash* (2025) 108 Cal.App.5th 561, 568.)  The court likewise has discretion to determine the amount of attorneys' fees.  (*Wash*, at p. 568; *Krug*, at p. 802.)  We review the court's decision in awarding attorneys' fees for an abuse of discretion. (See *Adler v. Vaicius* (1993) 21 Cal.App.4th 1770, 1777.)  "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it.'"  (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

8

B.    *The Trial Court Did Not Abuse Its Discretion in Awarding Attorneys' Fees to Leuchter*

Naeini makes multiple arguments for why the trial court abused its discretion in awarding attorneys' fees to Leuchter. Most of her arguments focus on the merits of her request for a CHRO, but the underlying CHRO is not at issue in this appeal of the attorneys' fees award. Naeini's other contentions, including alleged judicial bias, that the fee award was excessive, and that the court failed to consider her inability to pay, also lack merit.

Naeini contends Leuchter engaged in misconduct, including "perjury and bad faith," which should bar his recovery of attorneys' fees. But Naeini does not cite to the record to support her argument, stating simply that Leuchter's "obstruction and failure to take responsibility for his actions" support reversal of the fees award. For an appellant to meet his or her burden on appeal, the appellant must overcome the presumption that the trial court's order is correct and "affirmatively establish prejudicial error by providing an adequate record, citing to the record, and presenting a persuasive argument with citations to supportive legal authorities." (*LNSU#1, LLC v. Alta Del Mar Coastal Collection Community Assn.*, *supra*, 94 Cal.App.5th at p. 1070; accord, *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 [appellant's "burden on appeal 'includes the obligation to present *argument and legal authority* on *each point* raised'"].) Where, as here, the appellant "makes contentions unsupported by proper record citations or cogent legal arguments, we may treat the contentions as forfeited." (*LNSU#1*, at p. 1070; accord, *Coziahr v. Otay Water Dist.* (2024) 103 Cal.App.5th 785, 799 ["Points must be supported by reasoned argument, authority, and record citations, or may be deemed forfeited."].) Naeini has not met her

9

burden to show error with respect to alleged misconduct by Leuchter.[5]

To the extent Naeini is arguing that Leuchter's alleged harassment constitutes misconduct, the trial court found to the contrary in its May 21, 2024 order denying her request for a CHRO. That order is long since final because Naeini failed to appeal from it. (See Cal. Rules of Court, rule 8.104(a)(1) [setting deadlines of 60 and 180 days for appealing judgments], (e) [applying deadlines to appealable orders]; see *Van Beurden Ins. Services, Inc. v. Customized Worldwide Ins. Agency, Inc.* (1997) 15 Cal.4th 51, 56 ["The time for appealing [an appealable order] is jurisdictional; once the deadline expires, the appellate court has no power to entertain the appeal."].)[6]

Naeini also argues the trial court showed bias and hostility toward her by "repeated incidents of muting [her] microphone, yelling at her, and dismissing her attempts to explain her position before she could complete her statements." The record does not show the court exhibited any bias or hostility toward Naeini. Naeini is correct that at times the court muted Naeini's

---

[5] In her reply brief, Naeini additionally contends Shapiro "engaged in harassment, advanced false claims, and withdrew from representation." She provides no citations to the record to support her argument, thereby forfeiting the contention. (*LNSU#1, LLC v. Alta Del Mar Coastal Collection Community Assn., supra*, 94 Cal.App.5th at p. 1070.)

[6] Naeini's contention that the trial court failed to consider the "substantial evidence" she submitted of Leuchter's harassment likewise fails because the CHRO order is now final. Naeini's small claims case against Leuchter is similarly outside the subject of this appeal, and we do not consider her arguments regarding Leuchter's conduct in that case.

microphone during her remote appearances to direct Naeini to address matters relevant to the hearing or to request Naeini speak more slowly or loudly to ensure there was an adequate record. This conduct was fully consistent with the court's "duty and the discretion to control the conduct of the [hearings]." (*People v. Snow* (2003) 30 Cal.4th 43, 78.)

Naeini points to one instance during the hearing on attorneys' fees in which the trial court muted Naeini's microphone on the videoconference as an example of where her "responses were abruptly shut down" and she was "scolded publicly." Our review of the transcript shows otherwise. During the cited excerpt, Naeini asked Leuchter questions relating to Naeini's underlying allegations of harassment. The court asked Naeini to state her reasons for asking the questions, and Naeini answered that she wanted information on Leuchter's "false statements about the fact that he did not cause harassing activities," an explanation for why her ceiling would get wet when it rained, and to address the depreciation in her condominium unit's value from the water damage. At this point the court interrupted and tried to stop Naeini from continuing, saying "Ma'am, stop," then "Ma'am, please," then, as Naeini continued, "Stop. Stop, please." Naeini continued to talk, and the court muted her microphone, stating she could not relitigate whether there had been harassment. Rather, "the only things that are relevant here [are] the amount of fees and if there's an argument that the court should exercise its discretion not to grant the request for fees. . . . So please, I want you to move forward from what you argued in the original hearing with respect to what you believed was harassing by Mr. Leuchter [b]ecause this court has already held that that was not

11

harassment under the law." The court unmuted the microphone, and Naeini reiterated that she was unable to pay the fees and could not get a loan on the property.

Naeini's other examples of alleged misconduct pertain to the hearing on the CHRO, which, as discussed, is not at issue in this appeal. In any event, we observe that on page 12 of the cited transcript pages, the judge explained during Naeini's remote appearance that she had put her hand up to request Naeini stop talking "because we cannot understand you. So I want to make sure that we pause you and give you a chance to say what it is more clearly so that it's on the record." The court added, "I'm trying to make sure that . . . we are able to hear you so that you can tell your story." In no way did the court "shut [Naeini] down," "scold[]" her, "treat[] her with contempt," or "silence[] and humiliate[]" her.[7]

---

[7] Naeini also argues in a single sentence that the temporary judge who presided over the July 8, 2024 hearing did not allow her to use her own interpreter, which hindered her "ability to participate meaningfully." Although Naeini testified at the May 21, 2024 hearing without an interpreter, the court provided a court-certified Farsi interpreter for the July 8 hearing, who translated for Naeini. Naeini brought her own interpreter, but she did not object to use of the court-certified interpreter. Naeini later testified at the September 4 hearing without an interpreter, and she did not bring or request an interpreter. Naeini has failed to show how she was prejudiced by use of the court-certified interpreter at the July 8 hearing.

12

Naeini also contends the $6,000 award of attorneys' fees was excessive given Shapiro's "minimal" involvement with the case. With respect to the amount of the award, "'[t]he "experienced trial judge is the best judge of the value of professional services rendered in his court, and while [the trial court's] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong."'" (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095; accord, *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132.) Contrary to Naeini's contention, Shapiro performed a significant amount of work in defending Leuchter. As described in his declaration, Shapiro drafted Leuchter's response to Naeini's request, prepared Leuchter to testify at the CHRO hearing, and prepared Leuchter's request for attorneys' fees. He also represented Leuchter at the hearing on the CHRO (as well as the two hearings on the request for attorneys' fees, for which he did not charge). Shapiro's billing rate was $650 per hour, and he spent "well over" 13 hours on the case (totaling $8,450). However, he discounted his fees to a flat payment of $6,000, which Leuchter had paid. Naeini does not challenge any specific work performed by Shapiro that should not have been compensated, nor does she question his hourly rate or the total number of hours he spent on the case. On these facts, the trial court did not abuse its discretion in concluding $6,000 was a reasonable amount of attorneys' fees.

Finally, Naeini argues the trial court abused its discretion by failing to consider Naeini's inability to pay the fees award. As a threshold matter, section 527.6, in contrast to Family Code section 6344 (regarding issuance of a domestic violence restraining order), does not require consideration of a party's

13

ability to pay an attorneys' fees award. (Compare § 527.6, subd. (s) ["The prevailing party in an action brought pursuant to this section may be awarded court costs and attorney's fees, if any."]; with Fam. Code, § 6344, subd. (c) ["Before a court awards attorney's fees and costs pursuant to this section, the court shall first determine . . . that the party ordered to pay has, or is reasonably likely to have, the ability to pay."].)

Although the trial court was not required to consider Naeini's ability to pay, it did. After reviewing Naeini's income and expense declaration and eliciting information on how Naeini was able to pay her bills, the court concluded she had the ability to pay the attorneys' fees over time, ordering payment of $6,000 but allowing her 30 months to pay at a rate of $200 per month. The court also found that Naeini placed herself in the situation where she was liable for attorneys' fees because she never should have sought a CHRO for harassment instead of resolving her concerns through the HOA (given that her principal complaint related to damage to her unit). Naeini has not shown the court's decision to award attorneys' fees under a lengthy payment plan was an abuse of discretion.[8]

---

[8] Although we agree with Leuchter that Naeini's appellate briefs improperly relitigated the trial court's denial of the CHRO and failed to provide adequate citations to the record or legal authority, we cannot say Naeini's appeal was "frivolous or taken solely for delay." We therefore deny Leuchter's request for sanctions. (See § 907; Cal. Rules of Court, rule 8.276.)

14

## DISPOSITION

The September 4, 2024 order granting Leuchter's request for attorneys' fees is affirmed. Leuchter is entitled to recover his costs on appeal.

FEUER, J.

We concur:

SEGAL, Acting P. J.

STONE, J.